**FALK & MAYFIELD L.L.P., David Harper Falk P.C., Marc Christopher Mayfield P.C., David Harper Falk and Marc Christopher Mayfield, Appellants,**

v.

**Bruce MOLZAN and Molzan, Inc. d/b/a The Ruggles Grill, Appellees.**

No. 14–96–01134–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 18, 1998.

David M. Gunn, Houston, for appellants.

Rusty Hardin, Cathleen C. Herasimchuk, Houston, for appellees.

Before HUDSON, FOWLER and ROBERTSON,* JJ.

## OPINION

HUDSON, Justice.

Attorneys David Falk and Marc Mayfield and their law firm Falk & Mayfield appeal from a sanctions order awarding triple attor-

---

* Justice Sam Robertson sitting by assignment.

ney fees to Chef Bruce Molzan and Molzan, Inc. d/b/a The Ruggles Grill. We affirm the sanctions order.

According to appellant's petition, Angela Mogan drove her 1982 Toyota Tercel to Ruggles Grill on December 20, 1991, where it was parked by H.F. Valet Parkers. When she left the restaurant, the valet service was unable to start Ms. Mogan's automobile due to a defective ignition switch and/or a bent ignition key. Ms. Mogan authorized H.F. Valet Parkers to begin repair work on her automobile and left it in their custody. When Ms. Mogan returned a few days later, she discovered the repairs had not yet been initiated, her car had been vandalized, and Christmas presents had been stolen from the vehicle.

Two years later, on December 20, 1993, Ms. Mogan sued Ruggles Grill and H.F. Valet Parkers for negligence and alleged violations of the Deceptive Trade Practices Act. Ms. Mogan, who was represented by appellants, settled her claims against H.F. Valet Parkers on August 8, 1995. Ms. Mogan continued, however, to pursue her claims against Ruggles Grill. After an unsuccessful attempt to mediate the suit, the owner of Ruggles Grill, on or about January 9, 1996, placed a portable sign in front of his business which said:

> ASK ME ABOUT
> LAWSUIT ABUSE
> & THE LAW FIRM OF
> FALK & MAYFIELD
> ATTORNEY ANGELA
> MOGAN MCALLISTER
> DETAILS INSIDE

Appellants immediately requested the sign be removed. Appellees refused, but the sign was altered to read:

> ASK ME ABOUT
> THE LAW FIRM OF
> FALK & MAYFIELD AND
> ATTORNEY ANGELA
> MOGAN MCALLISTER
> DETAILS INSIDE

Several customers of Ruggles Grill and a private investigator retained by appellants

reported that when they inquired about the "details" referenced by the sign, they were told by restaurant personnel that appellants had filed a "frivolous lawsuit" against the restaurant in an attempt to extort food or money from the owner. One employee referred to the cause of action as a "bulls—t" lawsuit. The following day, appellants sued the owner of Ruggles Grill for libel, slander, and invasion of privacy seeking $500,000 in actual damages and $1,000,000 in exemplary damages.[1]

Several months later, appellants non-suited their entire case. Appellees immediately filed a motion to reinstate for the purpose of awarding sanctions under Rule 13. At the conclusion of the hearing on appellees' motion for sanctions, the trial judge held that appellants' suit was groundless and brought in bad faith for the purpose of harassment. The court further concluded that sanctions were warranted against Falk and Mayfield individually, and each was ordered to pay $21,180. The total award for sanctions, therefore, was $42,360, or triple the amount of appellees' attorney fees.

In their first point of error, appellants contend the trial court erred in awarding triple attorney fees as a sanction because its authority was limited to awarding "compensatory," rather than "punitive" sanctions. In other words, appellants argue that *if* sanctions were warranted in this case, the trial court was authorized under Rule 13 to impose sanctions equaling appellees' attorney fees, but had no authority to award sanctions over and above appellees' expenses.

Rule 13 provides that where a pleading is groundless and has been filed in bad faith for the purpose of harassment, the court shall impose an appropriate sanction available under Rule 215–2b. *See* Tex.R. Civ. P. 13. Rule 215(2)(b) grants the trial court authority to "make such orders . . . as are just." *See* Tex.R. Civ. P. 215(2)(b). The rule also recites examples of eight specific sanctions that may be imposed. One such sanction is "reasonable expenses, including attorney fees." Tex.R. Civ. P. 215(2)(b)(8). Thus, appellant claims the trial court's sanction should not have exceeded the cost of attorney fees. The rule states, however, that the listed sanctions are inclusive, not exclusive. *See* Tex.R. Civ. P. 215(2)(b). Accordingly, while this provision of Rule 215(2)(b) certainly authorizes the imposition of sanctions in the amount of attorney fees, we do not interpret it as being in the nature of a limitation or ceiling upon such sanctions.

Sanctions may be imposed for a variety of reasons and their function can be compensatory, punitive or deterrent in nature. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 922 (Tex. 1991) (Gonzalez, J., concurring). For example, when imposed for discovery abuse, sanctions are directed primarily at (1) securing compliance with the discovery rules, (2) deterring other litigants from similar misconduct, and (3) punishing the violators. *See Arkla, Inc. v. Harris*, 846 S.W.2d 623, 628 (Tex.App.-Houston [14th Dist.] 1993, no writ). When imposed under Rule 13, however, the chief purpose of sanctions is to check further abuses in the pleading process. *See Monroe v. Grider*, 884 S.W.2d 811, 818 (Tex. App.-Dallas 1994, writ denied); *Home Owners Funding Corp. of America v. Scheppler*, 815 S.W.2d 884, 889 (Tex.App.-Corpus Christi 1991, no writ). The degree of deterrence achieved by a sanction is inextricably related to its punitive effect. Restitution is not punishment; it is simply the restoration of a loss caused by one's own misfeasance or malfeasance. We hold, therefore, that a trial court may, under appropriate circumstances, impose sanctions under Rule 13 in excess of the costs or expenses incurred by the defendant. Accordingly, the trial court's imposition of sanctions for three times the amount of attorney fees was not impermissible *per se*.

While sanctions imposed under Rule 13 may be punitive, they must also be "just." *See Butan Valley, N.V. v. Smith*, 921 S.W.2d 822, 827 (Tex.App.-Houston [14th

1. On January 11, 1996, the day after the lawsuit was filed, the sign was changed to read:
I FEEL THAT THE
LAW FIRM OF FALK & MAYFIELD &
ATTORNEY ANGELA MOGAN MCALLISTER
COMMITS
LAWSUIT ABUSE
CHEF BRUCE

Dist.] 1996, no writ). The propriety or justness of a sanction is a matter on which reasonable minds may differ, and we must therefore extend to the trial court some measure of discretion. Accordingly, "[a] trial court's decision to impose sanctions under TEX.R. CIV. P. 13 will not be overruled on appeal unless an abuse of discretion is shown." *Zarsky v. Zurich Management, Inc.,* 829 S.W.2d 398, 399 (Tex.App.-Houston [14th Dist.] 1992, no writ); *Notgrass v. Equilease Corp.,* 666 S.W.2d 635, 638 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The test for abuse of discretion is "whether the court acted without reference to any guiding rules and principles," or "whether the act was arbitrary or unreasonable." *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

■ Here, the trial court examined appellants' pleadings and concluded they were groundless and filed in bad faith for the purpose of harassment. That conclusion is amply supported by an examination of the pleadings. An essential element of libel "is that the alleged defamatory statement be a statement of fact rather than opinion." *Howell v. Hecht,* 821 S.W.2d 627, 631 (Tex. App.-Dallas 1991, writ denied). Here, the meaning of the sign is somewhat ambiguous, but at most it accused appellants of "lawsuit abuse." To say that one has engaged in lawsuit abuse is to accuse him of legally manipulating the civil justice system to gain an unfair advantage in a personal or commercial dispute. It is an individual judgment that rests solely in the eye of the beholder. Admittedly, the accusation is derogatory and disparaging, but this is no different than saying that one is ugly, scurrilous, or disgusting.[2] The term "lawsuit abuse" does not, in its common usage, convey a verifiable fact, but is, by its nature, somewhat indefinite and ambiguous. Because it is a loose and figurative term employed as metaphor or hyperbole, it is an expression of opinion which is absolutely protected by the First Amendment of the United States Constitution and Section 8, article I, of the Texas Constitution. *See Carr v. Brasher,* 776 S.W.2d 567, 570 (Tex.1989) ("All assertions of opinion are protected by the first amendment of the United States Constitution and article I, section 8 of the Texas Constitution."); *Yiamouyiannis v. Thompson,* 764 S.W.2d 338, 340–41 (Tex. App.-San Antonio 1988, writ denied).

■ A lawsuit is not "groundless," and therefore subject to sanctions under Rule 13, merely because a plaintiff chooses to pursue a "weak" case. *See Monroe,* 884 S.W.2d at 817. "Groundless," as used in Rule 13, means "there is no *arguable* basis for the cause of action." *Attorney General of Texas v. Cartwright,* 874 S.W.2d 210, 215 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (emphasis added). Here, however, appellant's lawsuit is so blatantly vacuous, it is hard to conceive that any lawyer, or even a layman, would not immediately discern its absurdity.[3] Having no legal viability, the value of this cause of action rests solely upon its power to intimidate and coerce.

Moreover, to establish the element of "bad faith," appellees offered two witnesses who testified of other allegedly frivolous lawsuits filed by appellants. One defendant testified he was sued for "negligent rescue" when he pulled the plaintiff from Clear Lake. According to the defendant, the plaintiff, who had become intoxicated while socializing on a boat, fell overboard. After the defendant pulled the plaintiff from the lake, she dried off, and continued drinking. Two years later, appellants sued him for "negligent rescue" claiming the plaintiff was suffering from

---

**2.** "A statement may be false, abusive, unpleasant, and objectionable ... without being defamatory." *Schauer v. Memorial Care Sys.,* 856 S.W.2d 437, 446 (Tex.App.-Houston [1st Dist.] 1993, no writ.).

Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.

*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–40, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

**3.** Appellees' attorney testified he informed both appellants and appellants' counsel that the cause was frivolous. Appellees' attorney also told appellants he would seek no sanctions if they would dismiss their cause of action before his client incurred any further legal expenses. Appellees' offer was rebuffed.

a clavicular dislocation allegedly suffered when she was rescued.[4]

In another case, an attorney testified that his client, a home builder, entered into an earnest money contract to purchase a small tract of land. While the sale was still pending, Falk sued both the builder and the prospective seller seeking a temporary injunction to prevent the builder from constructing two houses on the property. The attorney, who is board certified in commercial real estate, testified the injunction was predicated upon deed restrictions that, on their face, had expired in 1946 pursuant to the express terms of the restrictive covenants. Nevertheless, the builder canceled the prospective purchase with the consent of the seller. The builder's attorney then contacted Falk, informed him that his client had never had anything other than an executory contract, that the earnest money contract had been canceled, and that he had no interest in the property. The builder's attorney further requested that his client be dismissed from the suit.

Rather than dismiss the builder, Falk proceeded to file an amended petition naming the builder as a defendant and alleging facts that were no longer true. In the amended petition, Falk alleged (1) the builder had entered into an agreement to purchase the property in question, (2) the builder had a reputation for "shoddy workmanship," (3) that the construction of multiple residences on the property would violate existing deed restrictions, and (4) the plaintiff, an adjacent property owner, had no adequate remedy at law to prevent the prospective construction. Falk requested an injunction, an independent environmental impact study to be paid for by the defendants, reasonable attorney fees, and all such other and further relief to which the plaintiffs might show themselves to be entitled. Although the suit was ultimately dismissed 18 months later, the builder incurred unnecessary legal expenses while defending himself against a frivolous suit.

In the face of this evidence, the trial court apparently concluded $42,360 was a just sanction for the filing of a one and a half million dollar frivolous lawsuit. In light of the record before us, we cannot say the trial court abused its discretion. Accordingly, appellants' first point of error is overruled.

Appellants argue in their second point of error that their cause of action was not entirely frivolous and that the greater portion of their suit was proper. Appellants claim, therefore, that the trial court erred in awarding sanctions based upon attorney fees generated while defending against the *entire* cause of action.

Falk and Mayfield filed their lawsuit against appellees on January 10, 1996. Thereafter, Falk and Mayfield retained Michael Garrett to represent them in the suit. On March 19, 1996, Garrett filed Plaintiff's First Amended Original Petition which differed only slightly from the original petition filed by Falk and Mayfield. Two days later, Garrett filed a notice of non-suit. Although the trial court sanctioned Falk and Mayfield, it concluded that no sanctions were warranted against Garrett. Because Garrett was not sanctioned, appellants contend the trial court must have concluded the First Amended Original Petition filed by Garrett was neither groundless nor filed in bad faith. Appellants theorize that since their original petition was very similar to the first amended original petition filed by Garrett, only a small portion of the original petition must have been sanctionable. Appellants argue, therefore, that appellees should not be compensated for attorney fees generated for defending against the entire suit, but only that small portion of the suit which was groundless and filed in bad faith.

■ The trial judge, however, was "entitled to consider the entire history of the case before him." *Allied Chemical Co. v. DeHaven*, 824 S.W.2d 257, 262 (Tex.App.-Houston [14th Dist.] 1992, no writ). Further, he was obliged to determine whether the offensive conduct was referable to the attorney, the party, or both. *See Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167, 172 n. 9

---

4. Appellants also sued the owner of the boat, who was not present when the plaintiff fell overboard, and numerous businesses which they claimed had polluted the water into which the plaintiff fell. The aspiration of lake water allegedly caused "pits" in the plaintiff's lungs.

(Tex.1993). Garrett did not initiate the suit against appellees, and although he filed an amended petition, he followed it two days later with a notice of non-suit. The trial court may have taken these facts into consideration when concluding no sanctions were warranted against Garrett. It does not logically follow, as appellants contend, that the trial court found some plausible merit in the First Amended Original Petition. Accordingly, appellants second point of error is without merit.

In the third point of error, appellants contend there is insufficient evidence to support the trial court's findings and that the findings, even if true, do not justify sanctions. Appellants argue appellees had the burden of proving the libel suit was groundless and filed in bad faith. Because no evidence was offered regarding the facts and circumstances surrounding the filing of the suit, appellants contend the trial court's findings cannot be sustained by the evidence.

Appellants correctly observe that the trial court's findings are highly unusual and many are not supported by evidence.[5] However, appellee's request for sanctions was not grounded upon contested facts, but upon appellants' pleadings. While pleadings are not normally cognizable evidence of the events

---

5. The trial judge, in his statement of particulars, made the following observations:

1. Plaintiffs filed this lawsuit less than one day after Bruce Molzan put a portable sign in front of his restaurant in Houston, Texas, that invited the public to ask him about lawsuit abuse, the law firm of Falk & Mayfield, and Angela Mogan McAllister.

2. In their Original Petition and in their demand letter dated January 9, 1996, Plaintiffs did not accurately depict the contents of Mr. Molzan's sign.

3. Plaintiffs believed the sign accused them of committing lawsuit abuse, but the sign did not say that.

4. The term "lawsuit abuse" is vague and does not have a definite meaning. It is a hyperbolic expression of opinion, not a verifiable statement of fact.

5. The sign may have offended Plaintiffs or caused them discomfort, but it was not actionable. Defendants' attorney put Plaintiffs on notice in writing before this lawsuit was filed that Mr. Molzan's sign was protected speech under the First Amendment.

6. By initially seeking a temporary restraining order, which was picked up by the local press, Plaintiffs only increased whatever discomfort Mr. Molzan's sign caused them by calling everyone's attention to the sign.

7. Plaintiffs, as lawyers, were already on the short end of the stick in public opinion polls.

8. Plaintiffs were too quick to take offense and failed to adequately investigate the facts or applicable law before filing this $1.5 million lawsuit.

9. Plaintiffs should have realized the better response would have been to ask Mr. Molzan to take the sign down because it was not very tasteful.

10. Plaintiffs should not have filed this lawsuit. It is groundless and brought in bad faith and for the purpose of harassment.

11. Filing frivolous lawsuits like this one only perpetuates rumors about lawyers and the legal system and will not put an end to them.

12. As lawyers, Plaintiffs have a higher duty than the average litigant to stop this type of public opprobrium against the legal profession and the justice system, rather than perpetuate it.

13. Currently, lawyers are not doing a good job of acting in such a way that will put an end to this type of public dissatisfaction.

14. Defendants have incurred attorney's fees of $14,120 in defending this lawsuit and seeking sanctions against Plaintiffs. Defendants' attorney put Plaintiffs on notice in writing that Defendants would not seek sanctions if Plaintiffs dismissed their lawsuit before Defendants were required to file an answer and spend time and money defending this lawsuit. Plaintiffs declined to do so.

15. Sanctions should be assessed under Texas Rules of Civil Procedure 13.

16. After the lawsuit was filed, Plaintiffs retained Michael J. Garrett to represent them. Thereafter, Plaintiffs filed a notice of voluntary nonsuit without prejudice. All of Mr. Garrett's pleadings were filed in good faith and no sanctions will issue against him or his law firm.

17. Sanctions should be assessed against David Harper Falk and Marc Christopher Mayfield, the two attorneys who originally filed this lawsuit, because good cause has been shown.

18. An appropriate sanction is $42,360, which is three times the attorney's fees incurred by Defendants. This sanction will adequately repair Defendants, punish the offenders, and deter them and others from future filings.

19. Half of the total sanction should be the responsibility of David Harper Falk and half should be the responsibility of Marc Christopher Mayfield.

20. The law firm of Falk & Mayfield, L.L.P., should be jointly and severally responsible for the entire sanction.

21. Payment of this sanction shall be suspended until an appellate court determines whether or not this sanction is an abuse of discretion, or until Plaintiffs fail to timely file their notice of appeal.

alleged therein,[6] they may show, as they do here, the alleged defamatory statement was absolutely privileged under both our state and federal constitutions.

▇▇ Nevertheless, "Rule 13 imposes a duty on the trial court to point out with particularity the acts or omissions on which sanctions are based." *Zarsky v. Zurich Management, Inc.*, 829 S.W.2d 398, 399 (Tex. App.-Houston [14th Dist.] 1992, no writ).[7] Here, as Justice Fowler correctly observes in her dissenting opinion, the trial judge's irregular findings raise a question as to whether he complied with this provision of the rule. While the court's written findings are certainly no model for other courts to emulate when attempting to draft a statement of particulars, the document satisfies, at least minimally, the requirements of Rule 13. Most importantly, the trial judge found:

> Plaintiffs filed this lawsuit less than one day after Bruce Molzan put a portable sign in front of his restaurant in Houston, Texas, that invited the public to ask him about lawsuit abuse, the law firm of Falk & Mayfield, and Angela Mogan McAllister.
> * * *
> The term "lawsuit abuse" is vague and does not have a definite meaning. It is a hyperbolic expression of opinion, not a verifiable statement of fact.
> The sign may have offended Plaintiffs or caused them discomfort, but it was not actionable.
> * * *
> Plaintiffs should not have filed this lawsuit. It is groundless and brought in bad faith and for the purpose of harassment.

Whether an accusation is one of fact or opinion, and hence whether it is defamatory, is a question of law for the court. *See Simmons v. Ware*, 920 S.W.2d 438, 446 (Tex. App.-Amarillo 1996, no writ); *Carr*, 776 S.W.2d at 570. Here, the court concluded the accusation of lawsuit abuse was, as a matter of law, a statement of opinion. We agree. The court further concluded the suit

was filed in bad faith. In light of the pleadings alone, we do not believe the trial court abused its discretion in concluding the suit was filed solely for the purpose of harassment.

The purpose of Rule 13 is to "'check abuses in the pleading process, *i.e.*, to insure that at the time the challenged pleading was filed the litigant's position was factually grounded and legally tenable.'" *Tarrant County v. Chancey*, 942 S.W.2d 151, 155 (Tex.App.—Fort Worth 1997, no writ). A suit is groundless if it has no basis in law or fact. *See* TEX.R. CIV. P. 13. Here, there is no material dispute regarding the facts, and appellants' suit is, on its face, nakedly frivolous. The essential findings necessary to support the sanctions were made by the trial court. Moreover, these findings are supported by the pleadings and evidence. Accordingly, appellants' third point of error is overruled.

▇▇ In their final point of error, appellants contend the trial court abused its discretion by imposing sanctions. The degree of discretion afforded the trial court is, we believe, greater when sanctions are imposed for groundless pleadings than when imposed for discovery abuse. Sanctions imposed for discovery abuse often impede a litigant's ability to present his case. As such, "'[t]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause.'" *TransAmerican*, 811 S.W.2d at 917. Thus, a sanction "'for discovery abuse should be no more severe than necessary to satisfy its legitimate purpose.'" *Hamill v. Level*, 917 S.W.2d 15, 16 (Tex.1996). The trial court must always explore the possibility of whether lesser sanctions might compel compliance with the discovery rules and correct the abuse that has occurred. *See Occidental Chemical Corp. v. Banales*, 907 S.W.2d 488, 490 (Tex. 1995).

When sanctions are imposed under Rule 13 for filing a groundless suit in bad faith, the

---

6. *See Howell v. Hecht*, 821 S.W.2d at 631.

7. "No sanctions under this rule may be imposed except for good cause, the particulars of which

must be stated in the sanction order." TEX.R. CIV. P. 13.

considerations are not the same. Because the suit has been decided, the imposition of sanctions under these circumstances does not obstruct a litigant's access to the courts or threaten the presentation of his case upon the merits. Rule 13 sanctions must, as we have said, be just, and a trial court does not have unfettered authority to punish an offender. He may not, for example, sanction him simply for innovative applications of the law or for advocating changes in the law. *See Dyson Descendant Corp. v. Sonat Exploration Co.*, 861 S.W.2d 942, 951 (Tex.App.— Houston [1st Dist.] 1993, no writ). Moreover, "bad faith" is not simply bad judgment or negligence. It is the "conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *Campos v. Ysleta General Hosp., Inc.*, 879 S.W.2d 67, 71 (Tex.App.—El Paso 1994, writ denied); *Elbaor v. Sanderson*, 817 S.W.2d 826, 829 (Tex.App.-Fort Worth 1991, no writ).

However, as we have previously stated, in light of the pleadings and evidence before us, we cannot say the trial court abused his discretion in imposing sanctions of $42,360. Accordingly, appellants' fourth point of error is overruled, and the trial court's sanction order is affirmed.

FOWLER, Justice, dissenting.

I respectfully dissent from the majority opinion for two very specific reasons. First, this record is devoid of any evidence that the suit was brought in bad faith or for purposes of harassment. Second, the appellant's lawsuit is not groundless, much less "blatantly vacuous" or absurd. I find nothing vacuous about the lawsuit and, to my mind, the only absurd thing about this case is the trial judge's unique and unorthodox findings of fact. For these reasons, I believe the trial court abused its discretion in imposing sanctions against appellants.

## STANDARD OF REVIEW

I would like to emphasize select aspects of the standard of review for this case. According to Rule 13, a trial court may impose sanctions against an attorney, a represented party, or both, who files a pleading which is either groundless and brought in bad faith, or groundless and brought for the purposes of harassment. *See* Tex.R. Civ. P. 13; *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex.1993). Rule 13 defines "groundless" as having "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." Tex.R. Civ. P. 13. The purpose of the rule is to check abuses in the pleading process. *See Home Owners Funding Corp. of America v. Scheppler*, 815 S.W.2d 884, 889 (Tex.App.—Corpus Christi 1991, no writ). Trial court work under the *presumption* that parties and their counsel file all papers in *good faith*, and the party seeking sanctions must *overcome that presumption* and has the burden of showing his right to relief. *See* Tex.R. Civ. P. 13; *GTE Communications Sys. Corp.*, 856 S.W.2d at 731; *Monroe v. Grider*, 884 S.W.2d 811, 817 (Tex.App.—Dallas 1994, writ denied).

In addition, "[r]ule 13 requires the trial court to hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person signing the groundless pleadings, and the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading." *Karlock v. Schattman*, 894 S.W.2d 517, 523 (Tex. App.—Fort Worth 1995, no writ); *see, e.g.*, Tex.R. Civ. P. 13. As Justice Baker wrote when he was on the Fifth Court of Appeals, "Without hearing evidence on the circumstances surrounding the filing of the pleading and the signer's credibility and motives, the trial court had no evidence to determine that the [plaintiff] or [his] attorneys filed the pleading in bad faith or to harass." *McCain v. NME Hospitals, Inc.*, 856 S.W.2d 751, 757–58 (Tex.App.—Dallas 1993, no writ). Although the rule does not give a reason for why the judge must hold a hearing and make findings of fact, common sense tells us that it is to ensure that Rule 13 sanctions are entered *only* when they are warranted.

## NO EVIDENCE TO SUPPORT FINDINGS

There are two problems with the trial court's findings of fact. First, findings 6, 9, 11, 12, and 13 could not support a sanction

order because they are immaterial to the ultimate issue in the case. The ultimate issue before the judge was whether appellants filed a lawsuit that was (1) groundless and brought in bad faith or (2) groundless and brought for purposes of harassment. Findings 6, 9, 11, 12, and 13, make inappropriate observations such as, "Plaintiffs, as lawyers, were already on the short end of the stick in public opinion polls" and "Currently, lawyers are not doing a good job of acting in such a way that will put an end to this type of public dissatisfaction." These irrelevant and immaterial findings have no bearing on the ultimate issue and could not support a sanctions order.

A second, more fundamental, insurmountable flaw affects each of the 20 findings of fact: the record contains no evidence to support them. The reporter's record only contains testimony about attorney's fees and two other allegedly frivolous lawsuits filed by Falk & Mayfield. In fact, the record of the sanctions hearing contains no evidence relevant to the ultimate issue. There is not even any evidence proving the language on the sign in controversy.

The parties now act as if evidence is before us on appeal. The briefs describe the lawsuit and the background facts and rely on facts not in the record. Although appellate rule 38.1 authorizes this court to accept uncontradicted facts in briefs as true, it does not transform those facts into admitted trial court evidence. *See* TEX.R.APP. P. 38.1. Even if the trial court granted the appellee's request to take judicial notice of the court's file and admit the pleadings into evidence, the factual allegations in the pleadings still would not be proved. *See Howell v. Hecht,* 821 S.W.2d 627, 631 (Tex.App.—Dallas 1991, writ denied) (stating that pleadings are not usually considered legally cognizable evidence). To prove the factual allegations in the pleadings, appellees would still have to present testimony and/or documents at an evidentiary hearing. *See Hidalgo v. Surety Savings & Loan Ass'n,* 462 S.W.2d 540, 543 (Tex.1971) (stating pleadings are not evidence); *see also* BLACK'S LAW DICTIONARY 555 (6th ed.1990) (defining evidence as "[a]ny species of proof ... *legally presented at the*

*trial of an issue,* by the act of the parties and through the medium of witnesses, records, documents, exhibits, concrete objects, etc., for the purpose of inducing belief in the minds of the court or jury as to their contention") (emphasis added). In fact, the only things accomplished by appellees' request for judicial notice were that the judge (1) agreed to consider the whole file before him, including his knowledge of what had transpired procedurally and historically in the case and what had happened in the hearings before him and (2) was aware of the allegations contained in the pleadings. These considerations did not and could not prove up the factual allegations in the pleadings.

Appellees had to prove up the circumstances surrounding the bringing of the lawsuit before they could prove appellants acted in bad faith and to harass appellee. Appellees did not prove up these circumstances. As a result, the reporter's record contains *no evidence* supporting the imposition of sanctions. *See, e.g., GTE Communications Sys. Corp.,* 856 S.W.2d at 730–31 (referring to what the evidence in the record showed and noting that the record contained no proof of a fact essential to support the trial court's imposition of a sanction); *Karlock,* 894 S.W.2d at 523 (holding that a trial court has no evidence to determine that a pleading is filed in bad faith or to harass if it does not hear evidence on the circumstances surrounding the filing of the pleadings signer's credibility and motives); *accord McCain,* 856 S.W.2d at 757–58.

Perhaps the parties stipulated to the background facts and the stipulation is not in the record. Perhaps the judge made his decision based on conduct in hearings before him. In any case, if the parties stipulated to the facts, the stipulation either should have been reduced to writing and filed in the record or read into the record. If the judge based his decision in part on events that happened in hearings before him, he needed to put that on the record. As it is, we have *nothing* in the record other than the testimony about the attorney's fees and the testimony about unrelated lawsuits.

The trial judge had no evidence before him to support his findings, and there is no evi-

dence of the circumstances surrounding the filing of appellant's suit.[1] Accordingly, there was no evidence to support any imposition of sanctions.

The majority apparently decided that the appellees could show bad faith/harassment by presenting testimony about other allegedly frivolous lawsuits brought by appellants; appellees presented a witness who was the defendant in an unrelated lawsuit and a witness who was a defendant's lawyer in another unrelated lawsuit. But, none of the parties in the three lawsuits were the same, and none of the issues in the lawsuits were the same. Further, no Rule 13 sanctions had been imposed in either case, even though the witnesses felt they were subjected to frivolous lawsuits.

This testimony was both irrelevant and inappropriate in a Rule 13 hearing. If the court used this testimony to conclude that appellants' petition against appellees was groundless, it abused its discretion. Furthermore, if the court used this testimony to conclude that appellants brought the petition in bad faith or for purposes of harassment, it abused its discretion.

In a Rule 13 hearing, the only way a judge can tell if a pleading is groundless is by looking at the pleading in question. A court cannot determine if one pleading is groundless by looking at other pleadings; it must look to the law governing the allegations in a pleading to decide if a pleading is groundless. Likewise, a court cannot determine that a suit has been brought in bad faith or to harass one defendant by looking at other lawsuits against other defendants. This restriction is most especially true when a court has not found those other lawsuits to be sanctionable under Rule 13. Other unrelated lawsuits are, simply stated, irrelevant. The only time that I can conceive of allowing testimony about other lawsuits in a Rule 13 hearing is if 1) the lawyers or party were sanctioned by a court under Rule 13 for bringing the lawsuit, *and* 2) the information was used only as an additional factor by the court in determining the *amount* of sanctions to award.

I conclude that, because the judge had no evidence before him to support the sanctions order, he abused his discretion in awarding sanctions.

## THE SUIT WAS NOT GROUNDLESS

Since the majority spent a fair amount of time discussing that the petition was groundless, I feel obligated to address the subject. Before a court can say a pleading is groundless, it must conclude that the pleading has no basis in law or fact and is not warranted by a good faith argument for the extension, modification, or reversal of existing law. *See* TEX.R. CIV. P. 13; *GTE Communications Sys. Corp.*, 856 S.W.2d at 730.

The elements of libel are defined in Texas Civil Practice and Remedies Code as

> a defamation expressed in written or other graphic form that tends ... to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997).

Libelous statements must be construed as a whole, in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *See Diaz v. Rankin*, 777 S.W.2d 496, 498–99 (Tex.App.—Corpus Christi 1989, no writ). Whether a matter is libelous is a question of law for the court. *See id.* at 498. But if the court determines the complained of language is ambiguous or of doubtful import, it should allow a jury to determine the statement's meaning and the effect the statement has on the ordinary reader or listener. *See id.* at 499.

Appellees claimed the sign was not libelous for two reasons. First, they claimed it was quintessentially an opinion, that it was not objectively verifiable, and in this regard was

---

1. Possibly, a pleading could be so meritless on its face that one would not need to prove the circumstances surrounding the filing of the lawsuit, but this pleading is not in that category.

like the phrase "governmental waste." Second, they argued the average reader would understand that the phrase was meant as an epithet and would not take the sign seriously. Although appellees presented no case law to the judge in support of these positions, the majority apparently agrees with both these contentions.

I disagree with both conclusions and base my disagreement primarily on *Milkovich v. Lorain Journal Co.*, a 1990 United States Supreme Court opinion cited by appellants to the trial court. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). In my opinion, *Milkovich* responds to both of appellees' contentions. *See id.* I will not recite the facts in *Milkovich.*[2] I need only describe the debate before the court. The defendants maintained that an allegedly libelous newspaper column was opinion, not fact. Relying on a 1974 United States Supreme Court opinion, the defendants claimed that only facts could be libelous and that opinions were excepted from libel laws as protected speech. *See id.* at 8, 110 S.Ct. 2695 (citing *Gertz v. Welch*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). The Supreme Court granted certiorari "to consider the important questions raised by the Ohio courts' recognition of a constitutionally required 'opinion' exception to the application of its defamation laws." *Id.* at 10, 110 S.Ct. 2695.

The Supreme Court held there is no opinion exception, disavowed the defendants' interpretation of *Gertz*,[3] and explained that a paragraph from *Gertz* had been misinterpreted by the courts to recognize "another First–Amendment–based protection for defamatory statements which are categorized as 'opinion' as opposed to 'fact'." *Id.* at 17, 110 S.Ct. 2695.

> Thus, we do not think this passage from *Gertz* was intended to create a wholesale defamation exemption for anything that might be labeled "opinion." ... Not only would such an interpretation be contrary to the tenor and context of the passage, but it would also ignore the fact that expressions of "opinion" may often imply an assertion of objective fact.

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion ... the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation or the statement, "Jones is a liar." As Judge Friendly aptly stated: "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think'."

*Id.* at 18–19, 110 S.Ct. 2695 (brackets in original). The Court refused to acknowledge a number of factors developed by the lower courts to determine whether a statement was an opinion or fact. The Court found that, for

---

**2.** Although I am not going to review the facts, I will set out the libelous newspaper column. The column said that *Milkovich*, the coach of a high school wrestling team and Scott, the superintendent of school, testified differently in a court hearing than they had testified during an OSHAA hearing. *Id.* at 4–5, 110 S.Ct. 2695. The column stated that Milkovich and Scott taught their students one thing by their testimony:

> " 'It is simply this: If you get in a jam, lie your way out. " 'If you're successful enough, and powerful enough, and can sound sincere enough, you stand an excellent chance of making the lie stand up, regardless of what really happened.... " 'Anyone who attended the meet, ... knows in his heart that Milkovich and Scott lied at the hearing after each having given his solemn oath to tell the truth.

*Milkovich*, 497 U.S. at 4–5, 110 S.Ct. 2695 (quotes in original).

the freedoms of expression to survive, the court must not rely on an "artificial dichotomy between 'opinion' and fact." *Id.* at 19, 94 S.Ct. 2997.

The cases the majority cites rely on the artificial distinction between opinion and fact rejected by the Supreme Court. The *Yiamouyiannis v. Thompson* opinion the majority relies on predates *Milkovich* and cites the very language from *Gertz* the Supreme Court cautioned against misinterpreting too broadly. *See* majority opinion at n.2; *Yiamouyiannis v. Thompson*, 764 S.W.2d 338, 341 (Tex.App.—San Antonio 1988, writ denied), *cert. denied* 493 U.S. 1021, 110 S.Ct. 722, 107 L.Ed.2d 742 (1990). In fact, the majority opinion appears to rely on the very distinction disavowed by the *Milkovich* court when it states that "an essential element of libel is that the alleged defamatory statement be a statement of fact rather than opinion." *See* majority opinion at p. 5.

Instead of looking at whether the column was "opinion," the U.S. Supreme Court looked first at "whether a reasonable factfinder could conclude that the statements in the . . . column imply an assertion that petitioner Milkovich perjured himself in a judicial proceeding." *Milkovich*, 497 U.S. at 21, 110 S.Ct. 2695. The Court then asked whether the inference that Milkovich committed perjury was sufficiently factual to be susceptible of being proved true or false.

This question should guide us in our inquiry. If one were to apply these questions to this case, one would ask if a reasonable fact finder could conclude (1) that appellees accused appellants of engaging in lawsuit abuse, and (2) that the phrase "lawsuit abuse" would tend to injure appellant's reputation exposing them to public contempt, ridicule, or financial injury or to impeach appellant's integrity or reputation and thereby expose appellants to public hatred, ridicule, or financial injury. *See* Tex. Civ. Prac. & Rem.Code Ann. § 73.001 (Vernon 1997). Based on the pleadings, and depending on the testimony, a reasonable juror arguably could determine that the phrase "lawsuit abuse" could injure appellee's reputation and that such an allegation under these circumstances was financially injurious. *See, e.g., Frank B. Hall & Co. v. Buck*, 678 S.W.2d 612, 617 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (stating that the communication of disparaging remarks like "classical sociopath" and "zero" is slander), *cert. denied*, 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720.

After answering these questions, we would then ask if the act appellants were accused of committing is susceptible of being proved true or false. Appellees' allegations of lawsuit abuse stemmed from a very specific incident and lawsuit. Based on the file before us, it appears that they are capable of being proved true or false.

It is my job, not to defend appellant's lawsuit, but to determine if the lawsuit has any arguable basis in law or fact. In my opinion, the phrase "lawsuit abuse" arguably is a defamatory statement, and, in my opinion, appellant's lawsuit has an arguable basis in law. Therefore, I would find that the trial court abused its discretion in holding that appellees' suit was groundless.[4]

In summary, the trial court abused its discretion in entering sanctions against appellees because the findings of fact are unsupported by the record. Finding that appellants' points of error three and four should be sustained, I would reverse the sanctions award. For these reasons, I respectfully dissent.

---

4. Having stated my opinion on the issue, I cannot help but also mention that the district judge sitting as the ancillary judge for the Harris County district courts must have felt the suit had some merit, because she set for a show cause hearing the appellant's request for a restraining order. If she thought the suit was blatantly and obviously vacuous, she should not have required appellees to respond to the charges.