NUMBER 13-02-275-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

 

 

MEDICAL SPECIALIST GROUP, P.A.,

D/B/A SARATOGA MEDICAL CENTER                               Appellant,

 

                                                             v.                                

 

RADIOLOGY ASSOCIATES, L.L.P., ET
AL.,                                 Appellees.

 

      On
appeal from the 105th District Court of Nueces County, Texas.

 

 

                                             OPINION

 

                         Before
Justices Hinojosa, Yañez, and Garza 

                                         Opinion
by Justice Garza

 








Appellant, Medical Specialist Group, P.A., d/b/a
Saratoga Medical Center (ASaratoga@), sued appellees, Radiology Associates, L.L.P., and
each of its individual partners (collectively ARadiology
Associates@), for breach of fiduciary duty, conversion of a
trade secret, and antitrust violations. 
Radiology Associates counterclaimed that Saratoga=s antitrust claims were groundless and brought in
bad faith and requested attorney=s fees and litigation expenses.  Prior to trial, Saratoga abandoned its
antitrust claims.  A jury found against
Saratoga, and the trial court signed a take-nothing judgment.  On appeal, Saratoga raises four legal and
factual sufficiency issues.  In a
cross-appeal, Radiology Associates asserts the trial court erred in finding
that Saratoga=s antitrust claims were not groundless and brought
in bad faith.  We affirm.  

                                                   A.  Factual
Background

Saratoga is owned and operated by Dr. Jairo
Puentes.  In June 1997, Saratoga entered
into a contract with Radiology Associates to conduct and interpret radiological
procedures performed at Saratoga=s facility. 
According to the contract, Radiology Associates had the exclusive right
to read Saratoga=s MRI films during the contract term.  The contract did not contain a non-compete
clause, nor was such a clause ever discussed between the parties.

In early 1998, Dr. Tamara Haygood, a partner in
Radiology Associates, obtained a computer printout from Saratoga=s MRI technician that included the number of MRI
procedures performed by Saratoga in November and December 1997, and the names
of the referring physicians.  In April
1998, Radiology Associates purchased an MRI machine and started performing MRI
procedures.  Radiology Associates
continued to perform radiological services for Saratoga until December 31,
1998, the end of the contract term.

                                         B.  Legal
and Factual Sufficiency








In its second and third issues, Saratoga contends
the evidence is legally insufficient to support the jury=s answers to Questions One and Three of the court=s charge, and the evidence conclusively established,
as a matter of law, the alternative answers. 
In its first and fourth issues, Saratoga contends the jury=s answers to Questions One and Three of the court=s charge are contrary to the great weight and
preponderance of the evidence and are manifestly unjust.

                                                          1.  Standard of Review

When a party attacks the legal sufficiency of an
adverse finding on which it has the burden of proof, the party must demonstrate
on appeal that the evidence establishes, as a matter of law, all vital facts in
support of the issue.  Dow Chem. Co.
v. Francis, 46 S.W.3d 237, 241 (Tex. 2001); Pearson v. Deboer, 99
S.W.3d 273, 275 (Tex. App.BCorpus Christi 2003, no pet.).  When we review a "matter of law"
challenge, we first examine the record for evidence that supports the finding
and ignore all evidence to the contrary. 
Dow Chem. Co., 46 S.W.3d at 241; Pearson, 99 S.W.3d at
275.  If there is no evidence to support
the finding, we examine the entire record to determine if the contrary
proposition is established as a matter of law. 
Dow Chem. Co., 46 S.W.3d at 241; Pearson, 99 S.W.3d at
275.  The issue should be sustained only
if the contrary proposition is conclusively established.  Dow Chem. Co., 46 S.W.3d at 241; Pearson,
99 S.W.3d at 275. 








When a party attacks the factual sufficiency of an
adverse finding on an issue on which it has the burden of proof, the party must
demonstrate on appeal that the adverse finding is against the great weight and
preponderance of the evidence.  Dow
Chem. Co., 46 S.W.3d at 242; Pearson, 99 S.W.3d at 275.  We must consider and weigh all of the
evidence, and can set aside a verdict only if the evidence is so weak or if the
finding is so against the great weight and preponderance of the evidence that
it is clearly wrong and unjust. Dow Chem. Co., 46 S.W.3d at 242; Pearson,
99 S.W.3d at 275.  If we set aside a
verdict, we must "detail the evidence relevant to the issue" and
"state in what regard the contrary evidence greatly outweighs the evidence
in support of the verdict."  Dow
Chem. Co., 46 S.W.3d at 242 (quoting Pool v. Ford Motor Co., 715
S.W.2d 629, 630 (Tex. 1986)); Pearson, 99 S.W.3d at 275.

                                                        2.  Fiduciary Relationship

Question One of the trial court=s charge asked the jury: ADid a relationship of trust and confidence exist
between Jairo Puentes, M.D., and Radiology Associates before June 17, 1997 and
between Saratoga Medical Center and Radiology Associates after said date?@  The jury
answered ANo@ to this question.

Saratoga contends the evidence presented to the jury
conclusively established, as a matter of law, that Dr. Puentes held Radiology
Associates in a position of trust and confidence to act in his best interests
and in the best interest of Saratoga. 
Saratoga also contends the jury=s answer to Question One is contrary to the great
weight and preponderance of the evidence and is manifestly unjust.

Whether a confidential or fiduciary relationship
exists is normally a question of fact to be decided by the jury.  Procom Energy, L.L.A. v. Roach, 16
S.W.3d 377, 382 (Tex. App.BTyler 2000, pet. denied); Hoggett v. Brown,
971 S.W.2d 472, 488 (Tex. App.BHouston [14th Dist.] 1997, pet. denied); Farah v.
Mafrige & Kormanik, P.C., 927 S.W.2d 663, 675 (Tex. App.BHouston [1st Dist.] 1996, no writ).  When the issue is one of no evidence or
conclusive evidence, the issue is a question of law.  Farah, 927 S.W.2d at 675.








If not a recognized formal fiduciary relationship,
the question of whether an informal fiduciary relationship exists is to be
determined from the actualities of the relationship between the persons
involved.  See Thigpen v. Locke,
363 S.W.2d 247, 253 (Tex. 1962); Dominguez v. Brackey Enters., Inc., 756
S.W.2d 788, 791 (Tex. App.BEl Paso 1988, writ denied).  Such a relationship may arise where one
person trusts in and relies on another, whether the relation is a moral,
social, domestic, or purely personal one. 
Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 176 (Tex.
1997); see Thigpen, 363 S.W.2d at 253. 
However, a fiduciary relationship is an extraordinary one and will not
be lightly created; mere subjective trust does not convert an arms-length
transaction into a fiduciary relationship. 
See Thigpen, 363 S.W.2d at 253; Schlumberger Tech. Corp.,
959 S.W.2d at 177; see also Crim Truck & Tractor Co. v. Navistar Int=l Transp. Corp., 823 S.W.2d 591, 594 (Tex. 1992) (stating Athe fact that one businessman trusts another, and
relies upon his promise to perform a contract, does not arise to a confidential
relationship@).  Instead,
to impose such a relationship in a business transaction, the relationship must
exist prior to, and apart from, the agreement made the basis of the suit.  See Schlumberger Tech. Corp., 959
S.W.2d at 177; Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 289
(1995).

Saratoga contends that the evidence presented to the
jury conclusively established that a fiduciary relationship existed before, and
apart from, the contract that is the basis of this suit.  Specifically, Saratoga refers to a period of
two and one-half years, beginning in 1988, when Dr. Puentes was the medical
director of Rehabilitation Hospital of South Texas and Radiology Associates was
responsible for reading images and performing radiology work for the
hospital.   Saratoga further references
Dr.  Puentes= participation in two limited partnerships, which
also included a few of the individual partners of Radiology Associates.








The first limited partnership, known as C.C.
Imaging, Ltd., was created when Columbia=s Southside Hospital invited members of the hospital
staff to participate in the purchase of an MRI machine.  Dr. Puentes testified that he became a
limited partner in C.C. Imaging, Ltd. 
and that  C.C. Imaging, Ltd.
contracted with Radiology Associates to read MRI examinations at the Southside
Hospital.  Dr. Puentes stated that based
on his experience and knowledge from the time he arrived in Corpus Christi in
1988, he relied upon the physicians of Radiology Associates as being highly
qualified and fair, candid, open, and honest in their relationship, and
expected that they would place the interests of the machine=s investor above their own selfish interests.

Dr. Puentes testified that the second limited
partnership, known as the Bay Area Health Care Group, Ltd., was created by
Columbia when it decided to build the new Columbia hospital.  The Bay Area Health Care Group, Ltd.
purchased the MRI machine owned by C.C. Imaging, Ltd.  Thus, a partner=s
percentage interest in C.C. Imaging, Ltd. 
became an interest in the Bay Area Health Care Group, Ltd.  Dr. Puentes testified that Drs. Cook,
Hallerman, Strong, and Wilson, all partners in Radiology Associates, were
limited partners in the Bay Area Health Care Group, Ltd.  Radiology Associates read the images, wrote
the reports, and directed the operation of the MRI machine at the hospital.  Dr Puentes testified that he relied on Radiology
Associates with regards to the MRI machine in the same manner as he did when it
was located at Southside Hospital.  








After reviewing the record, we hold the evidence
does not establish, as a matter of law, all vital facts in support of a
fiduciary relationship.  Radiology
Associates was not a partner in either limited partnership, and Dr. Puentes= participation in two limited partnerships with a
few of Radiology Associates= partners is not evidence of a confidential
relationship between Saratoga and Radiology Associates.  Because a fiduciary relationship was not
conclusively established, Saratoga=s legal sufficiency challenge must fail.

Furthermore, the evidence supporting the jury=s answer to Question One is not so weak, or against
the great weight and preponderance of the evidence, that it is clearly wrong
and unjust.  Therefore, Saratoga=s factual sufficiency challenge must also fail.

                                                                3.  Trade Secret

Question Three of the trial court=s charge asked the jury: AOn the occasion in question, was Saratoga Medical
Center=s list of referring doctors and MRI procedures a
trade secret of Saratoga Medical Center?@  The jury
answered ANo@ to this question.

Saratoga contends the evidence conclusively
establishes, as a matter of law, that its list of MRI referring physicians was
a trade secret, and the jury=s answer to Question Three is wrong.  Saratoga also contends the jury=s answer to Question Three is contrary to the great
weight and preponderance of the evidence and is manifestly unjust.

It is unnecessary, however, to address these
contentions because we conclude error, if any, is waived.  Rule 38.1(h) of the Texas Rules of Appellate
Procedure provides that an appellant's brief "must contain a clear and
concise argument for the contentions made, with appropriate citations to
authorities and to the record."  Tex. R. App. P.38.1(h).  Failure to cite authority or provide
substantive analysis waives an issue on appeal.  See Fed. Sign v. Tex. S. Univ., 951 S.W.2d
401, 410 (Tex. 1997); Tex. Dep't of Pub. Safety v. Struve, 79 S.W.3d
796, 801 n.6 (Tex. App.BCorpus Christi 2002, pet. denied).  Because Saratoga offers no legal analysis and
fails to cite any authority supporting these specific issues, we hold that
error, if any, is waived.  See
McIntyre v. Wilson, 50 S.W.3d 674, 682 (Tex. App.BDallas 2001, pet. denied).








Accordingly we overrule Saratoga=s first, second, third, and fourth issues.

                                  C.  Radiology
Associates= Cross-Appeal

 

Radiology Associates has filed a cross-appeal
claiming that the trial court abused its discretion in denying its counterclaim
for attorney=s fees and in finding that Saratoga=s anti-trust claims were not groundless and brought
in bad faith.  Although the trial court
denied Radiology Associates= claims for attorney=s fees
and expenses under both the Texas Free Enterprise and Antitrust Act of 1983 and
rule of civil procedure 13, Radiology Associates has only appealed the court=s ruling under the Antitrust Act.  The following provision of the Antitrust Act
therefore governs this case:  

On a finding by the court that an action under this
section was groundless and brought in bad faith or for the purpose of
harassment, the court shall award to the defendant or defendants a reasonable
attorney=s fee, court costs, and other reasonable expenses of
litigation.  

 

See Tex. Bus. & Com. Code Ann. ' 15.21(a)(3) (Vernon 2002).    

 








In our research, we have found only one case
applying the relevant provision of the Antitrust Act.  See Wohlfahrt v. HCA Health Servs.,
No. 14-96-381-CV, 1997 Tex. App. LEXIS 5197 (Houston [14th Dist.] 1997, pet.
denied) (not designated for publication). 
In Wohlfahrt, the Fourteenth Court of Appeals applied the supreme
court=s Donwerth precedent, which interpreted a
similar provision of the DTPA.  Id.
at *2B3.  Donwerth
v. Preston II Chrysler-Dodge, Inc., 775 S.W.2d 634, 637 (Tex. 1989)
(interpreting Tex. Bus. & Com. Code
'17.50(c) and rule of civil procedure 13).   The DTPA provision discussed in Donwerth is
similar, yet not identical, to the relevant provision of the Antitrust
Act.  Compare Tex. Bus. & Com. Code Ann. ' 15.21(a)(3) (Antitrust Act) with Tex. Bus. & Com. Code ' 17.50(c) (DTPA). 
We nevertheless find the Donwerth precedent very helpful in this
context because, in it, the supreme court explained that the court, not the
trier of fact, must determine the existence of groundlessness, bad faith, and
harassment, elements which are required under both the Antitrust Act and the
DTPA.  Donwerth, 775 S.W.2d at
637.  Because there is an absence of case
law under the relevant provision of the Antitrust Act and because there is
well-developed authority under similar provisions of the DTPA and rule of civil
procedure 13, we will use this authority to decide whether the trial court
abused its discretion in denying Radiology Associates= claim for attorney=s fees
and expenses.

As stated above, a defendant may recover attorney=s fees and expenses under the Antitrust Act only if
the action Awas groundless and brought in bad faith or for the
purpose of harassment.@  Tex. Bus. & Com. Code Ann. ' 15.21(a)(3). 
We understand this language to mean that the action must be both
groundless and brought in bad faith or that the action must be both groundless
and brought for the purpose of harassment. 
It would not be enough for an action to be merely groundless, brought in
bad faith, or brought for the purpose of harassment.  There must be a combination of groundlessness
with either bad faith or harassment.  For
a better understanding of these requirements, we turn to the case law under
similar provisions of the DTPA and rules of civil procedure.     








In Donwerth, the supreme court stated that Agroundless@ as used in the DTPA has the same meaning as it does
in rule of civil procedure 13:  ANo basis in law or fact and not warranted by good
faith argument for the extension, modification, or reversal of existing law.@  Donwerth, 775 S.W.2d at 637. 
In the context of the DTPA and rule 13, intermediate courts have held
that Abad faith@ is the conscious doing of a wrong for dishonest,
discriminatory, or malicious purposes.  Campos
v. Ysleta Gen. Hosp., 879 S.W.2d 67, 71 (Tex. App.CEl Paso 1994, writ denied); Elbaor v. Sanderson,
817 S.W.2d 826, 829 (Tex. App.CFort Worth 1991, no writ).  The courts have held that Abad faith@ does not exist simply because a party exercises bad
judgment or is negligent.  Falk &
Mayfield L.L.P. v. Molzan, 974 S.W.2d 821, 828 (Tex. App.CHouston [14th Dist.] 1998, pet. denied).  In  Donwerth,
the supreme court held that, Aat the very least, the requirement that the suit be
brought >for purposes of harassment= must mean it was brought for the sole purpose of
harassment.@  Donwerth,
775 S.W.2d at 638.  Having reviewed other
courts= interpretations of similar provisions under the
DTPA and rules of civil procedure, we proceed by applying such interpretations
to the case before us.      








The only evidence before the trial court regarding
Radiology Associates= claim for attorney=s fees
and expenses under section 15.21(a)(3) was an affidavit from its counsel.  There is no indication in the record or the
briefs that the trial court held a hearing to consider the circumstances
surrounding the filing of Saratoga=s action and the credibility and motives of Saratoga
and its counsel in filing the action. 
Nor is there any indication anywhere in the record that Radiology Associates
ever objected to the trial court=s failure to hold such a hearing.  Although the court may determine whether an
action is groundless based on the totality of the tendered evidence produced,
the court cannot determine bad faith or harassment based solely on such
evidence.  See Myer, 779 S.W.2d at
808.  Without hearing evidence on the
circumstances surrounding the filing of the pleading and the signer=s credibility and motives, the trial court has no
evidence to determine whether the party or its attorneys filed the pleading in
bad faith or to harass.  Davila v.
World Car Five Star, 75 S.W.3d 537, 544 (Tex. App.CSan Antonio 2002, no pet.); New York Underwriters
Ins. Co. v. State Farm Mut. Auto. Ins. Co., 856 S.W.2d 194, 205 (Tex. App.CDallas 1993, no writ).   Accordingly, Radiology Associates= appeal can be properly overruled on this basis
alone.  

Nevertheless, in recognition that the case law above
interprets provisions other than the one in the antitrust act, we find it
judicious to note that, even if the lack of a hearing were not fatal, the
allegations of the affidavit do not establish that Saratoga acted in bad faith
or for the sole purpose of harassment. The affidavit does not discuss the
circumstances surrounding the action=s filing or the credibility and motives of the
signer, except in an indirect, brief, and conclusory manner.  It states

Saratoga Medical Center=s initial and continued assertion of these claims
was groundless and brought in bad faith or for the purpose of harassment.  Saratoga Medical Center=s defiance of the Court=s explicit order that it plead the most fundamental
distinction (horizontal vs. vertical) involving its 15.05(a) claim and its
explicit statement that the claims were Astrategic,@ plainly show that the pleadings asserting these
claims were groundless and brought in bad faith or groundless and brought for
the purpose of harassment.  Saratoga
Medical Center certainly knew the effect if its allegation of these claims,
knew that they would cause the defendant to expend great resources in
response.  

 

The affidavit appears to base its assertion that
Saratoga=s claim was brought in Abad faith or for the purpose of  harassment@ on
three allegations:  (1) Saratoga failed
to re-plead its claims after being ordered to do so; (2) after the verdict,
Saratoga=s counsel stated that the claims were Astrategic@; and (3) Saratoga knew that the claims would cause
the defendant to expend great resources. 
Having reviewed the affidavit carefully, we fail to see how these
allegations warrant any finding of bad faith or harassment.   








Failure to re-plead a cause of action, even
following a court order to do so, does not prove that a party consciously
committed a wrong for dishonest, discriminatory, or malicious purposes.  See Campos, 879 S.W.2d at 71 (defining
bad faith).  A court order to re-plead
may prove that an attorney exercised poor judgment in drafting his or her
pleadings, but poor judgment does not amount to bad faith.  See Molzan, 974 S.W.2d at 828.  A refusal to re-plead after a court order to
do so may also amount to poor judgment, especially if it results in dismissal
of the claim, but again, poor judgment is not tantamount to bad faith.  See id.  Taken alone, such actions simply do not prove
a wrong committed for dishonest, discriminatory, or malicious purposes.  

For similar reasons, failure to re-plead also does
not prove that the action was brought for the sole purpose of harassment.  See Donwerth, 775 S.W.2d at 637 (defining
harassment).  Failure to re-plead tells
very little, if anything, about why the action was originally filed.  It certainly does not eliminate all reasons
other than harassment.        

Radiology Associates argues that Saratoga=s failure to re-plead should be considered along
with its statement that the claims were Astrategic@ and its knowledge that the claims would be costly
to defend, but these considerations do not change our view of the
evidence.  First, the word Astrategic@ is not very helpful.  The record does not reveal the context in
which the word was used.  The affidavit
states that counsel for Saratoga used it during a post-verdict argument, but
the affidavit fails to specify how it was used. 
Apparently, Radiology Associates would like the word Astrategic@ to be understood in the worst sense possible,
implying dishonesty, discrimination, or malice or that the action was brought
for the sole purpose of harassment.  Such
an inferential leap can be supported by no more than speculation and
results-oriented logic.  The word Astrategic@ alone simply cannot establish bad faith or
harassment, even if it is used to describe claims that were later dropped or
never re-plead.     








Second, the affidavit provides no basis for this
Court to conclude that Saratoga knew the claims Awould
cause the defendant to expend great resources in response.@  Nowhere in
his affidavit does counsel for Radiology Associates establish that he had
personal knowledge or was otherwise qualified to testify to Saratoga=s knowledge of his client=s litigation costs. 
Counsel=s statement is purely conclusory on that point.  

Even if it were established that Saratoga knew its
action Awould cause the defendant to expend great resources
in response,@ such knowledge would be insufficient to prove that
Saratoga wrongfully filed its action for dishonest, discriminatory, or
malicious purposes or that it did so solely for the purpose of harassment.  Essentially, Radiology Associates argues that
Saratoga acted in bad faith or for the sole purpose of harassment because it
filed expensive claims against Radiology Associates and later dropped them in
favor of other claims.  We are unwilling
to draw such a conclusion based on the tenuous arguments and speculative
evidence before this Court.  Apparently,
the trial court was equally reluctant to do so, and we believe its ruling was
far from an abuse of discretion.  

In sum, Radiology Associates failed to establish
that Saratoga brought its claims in bad faith or for the sole purpose of
harassment.  Thus, even if Radiology
Associates had put on sufficient evidence to prove the claims were groundless,
it was not entitled to attorney=s fees and expenses under the Antitrust Act.  We therefore hold that the trial court did
not abuse its discretion in denying Radiology Associates= claim for attorney=s fees
and expenses.








The dissent suggests that the outcome of this case
should be different solely because Radiology Associates was the only party to
produce evidence regarding Saratoga=s bad faith. 
The dissent=s basis for this conclusion is a misapplication of Ragsdale
v. Progressive Voters League, 801 S.W.2d 880, 881B82 (Tex. 1990) (per curiam), a case involving the
amount of attorney=s fees and not bad faith or harassment

In Ragsdale, the Texas Supreme Court reviewed
whether the trial court abused its discretion by awarding only $150 in attorney=s fees when the uncontroverted evidence presented at
trial showed that the attorney=s fees totaled $22,500.  Id.  The supreme court noted that the amount of
attorney=s fees was an issue for the court as the trier of
fact and listed several factors that the court should take into account in
making its determination.  See id.
at 881.  

As a preliminary matter, the court stated the
general rule that Athe testimony of an interested witness, such as a
party to the suit, though not contradicted, does no more than raise a fact
issue to be determined by the jury.@  Id.
at 882.  It then articulated an exception
to the general rule:  A[W]here the testimony of an interested witness is
not contradicted by any other witness, or attendant circumstances, and the same
is clear, direct and positive, and free from contradiction, inaccuracies, and
circumstances tending to cast suspicion thereon, it is taken as true, as a
matter of law.@  Id.  The court noted that the present case fell
within the exception to the general rule and proceeded to award attorney=s fees in the amount of $22,500.  See id.    








The dissent would use Ragsdale to establish
bad faith Aas a matter of law@
because Saratoga failed to produce evidence to controvert the affidavit
submitted by Radiology Associates.  This
stretches the Ragsdale precedent beyond its original context, which was
the amount of reasonable attorney=s fees.  Even
in the Ragsdale opinion, the supreme court acknowledges the limited
applicability of its precedent, cautioning that it did Anot mean to imply that in every case when
uncontradicted testimony is offered it mandates an award of the amount claimed.@  Id.
(emphasis added).  Indeed, the court=s subsequent invocation of Ragsdale has been
limited to issues regarding the amount, rather than the availability of,
attorney=s fees.  See,
e.g., Brown v. Bank of Galveston, N.A., 963 S.W.2d 511, 516B17 (Tex. 1998). 
We are unaware of any case in which supreme court has used Ragsdale to
establish the existence of bad faith or harassment.  

The intermediate courts have mostly restricted their
application of Ragsdale to the limited issue of whether the uncontested
evidence established reasonable and necessary attorney=s fees, an issue which is entirely distinct from
whether attorney=s fees are available because of bad faith or
harassment.  Although some intermediate
courts have applied Ragsdale outside the context of attorney=s fees, these instances have been relatively rare
and typically involved questions for the trier of fact such as the amount of
damages, not issues for the court, such as bad faith and harassment.  See Donwerth, 775 S.W.2d at 637
(explaining that the court, not the trier of fact, must determine the existence
of groundlessness, bad faith, and harassment).    








Even if the applicability of Ragsdale were
not limited to the amount of attorney=s fees, the supreme court never intended for the
limited exception to apply in all instances where evidence is
uncontradicted.  As the supreme court
explained in Ragsdale, A[E]ven though the evidence might be uncontradicted,
if it is unreasonable, incredible, or its belief is questionable, then such
evidence would only raise a fact issue to be determined by the trier of fact.@  Ragsdale,
801 S.W.2d at 882.  The dissent ignores
this caveat entirely, choosing instead to accept the affidavit unconditionally
because Saratoga did not present contradictory evidence and because the
affidavit Ais clear, direct and positive evidence.@  But that is
not enough even under Ragsdale, which requires that the testimony of an
interested witness not only be uncontradicted by any other witness but also
uncontradicted by Aattendant circumstances.@  Id.  Ragsdale also mandates that the
uncontradicted testimony be not only clear, direct, and positive but also Afree from contradiction, inaccuracies, and
circumstances tending to cast suspicion thereon.@  Id.  The dissent glosses over these requirements
and ultimately fails to discuss or apply them in suggesting that the affidavit
established Saratoga=s bad faith as a matter of law.  The dissent would thus turn the limited
exception articulated in Ragsdale into a complete reversal of the
general rule by holding that uncontradicted evidence from an interested party
which is clear, direct, and positive should always be accepted as true as a
matter of law.  We will not endorse such
an interpretation of supreme court precedent.  


The judgment of the trial court is affirmed. 

 

 

 

_______________________

DORI CONTRERAS GARZA,

Justice

 

Concurring and Dissenting Opinion

by Justice Federico G. Hinojosa.

 

Opinion delivered and filed 

this the 31st day of August, 2005.