**Joe DOMINGUEZ, Appellant,**

v.

**BRACKEY ENTERPRISES, INC., William Brackey, Individually, and Roger Brackey, Individually, Appellees.**

**No. 08–87–00200–CV.**

Court of Appeals of Texas, El Paso.

July 20, 1988.

Rehearing Denied Aug. 31, 1988.

Robert E. Kennedy, El Paso, for appellant.

Norman Gordon, Brenda J. Norton, Diamond, Rash, Leslie & Smith, El Paso, for appellees.

Before OSBORN, C.J., and
SCHULTE and WOODARD, JJ.

## OPINION

SCHULTE, Justice.

Appeal is from an adverse judgment following a jury verdict. The jury made findings favorable to Appellees in regard to breach of contract, breach of fiduciary duty and deceptive trade practices. Southwest International Systems, Inc., will be referred to as SWIS. ` We affirm.

The court, on April 10, 1987, awarded Appellees judgment against Appellant and the other defendants, jointly and severally, $53,000.00 actual damages, mandatory additional damages of $2,000.00, $5,000.00 exemplary damages from each of the three defendants together with interest and attorneys' fees.

Only Joe Dominguez appeals from the judgment, asserting no evidence and insufficient evidence as to the following jury findings made in response to special issues: that Dominguez was in a fiduciary relationship with Appellees with respect to business investment matters; that Appellant assured Appellees that they could rely upon SWIS, Inc., to provide them with adequate professional services because of Appellant's involvement with SWIS, Inc.; that Appellant breached his fiduciary relationship with Appellees; that such assurances were the producing cause of damage; that Appellant made the representations in-

quired about in questions eleven, twelve, thirteen, fourteen and fifteen; that Appellant's action in regard to the lobster and last shrimp transaction was unconscionable; that Appellant was ever involved in any of the transactions complained of as an individual. Appellant additionally urges error in the trial court's finding as a matter of law that Appellees were consumers.

Since most of the points of error concern "no evidence" and "insufficient" evidence assertions, we will set forth here the standards which we follow in reviewing the evidence in such an instance. When reviewing a "no evidence" challenge, an appellate court must only consider the evidence and reasonable inferences drawn therefrom, tending to support the jury verdict or court finding and disregard all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Company of America*, 717 S.W.2d 588, 593 (Tex. 1986). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *See Stafford*, 726 S.W.2d at 16. In reviewing a factual sufficiency challenge, the court must first examine all of the evidence. *Lofton v. Texas Brine Corporation*, 720 S.W.2d 804, 805 (Tex.1986). Having considered and weighed all of the evidence, the court may set aside the verdict only if it is so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. *Cain, et al. v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). An appellate court may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact. This is true even if a different answer could be reached on the evidence. *Clancy v. Zale Corporation*, 705 S.W.2d 820, 826 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

We have examined all of the evidence that the jury heard in arriving at their answers. It was Appellant's testimony that as a certified public accountant (CPA), his duties include the preparation of tax returns, providing tax advice, possibly including tax shelters, advice on investments to avoid or defer tax and advice to clients on how to operate their business. He explained that SWIS was organized in 1981, and that at all times here concerned he was a shareholder and officer of the corporation. Between 1983 and 1985, or 1986, SWIS operated as a seafood broker. As a broker, it was customary not to disclose to buyers who the sellers were, to preclude being "cut out."

Appellant began serving William Brackey as a CPA in about 1981. Thereafter, in late 1983 or early 1984, William Brackey together with his brother, Roger Brackey, took their mother to Appellant following the death of William's and Roger's father. As Dominguez said about the mother:

> She wanted me to help them, their sons, you know, make the right decision, and what have you, and whatever they may be, you know, thinking of getting into; And, she wanted to know where to put her money; and, you know, see whatever the CD's were doing, or whatever.

The Brackeys formed Brackey Enterprises, Inc. Appellant represented that the business of SWIS was on a very large scale. In March 1984, the Brackeys made a $10,000.00 investment in a seafood deal that SWIS was putting together. Appellant represented that Appellees could realize a substantial return on their investment. In his words, "[t]hey could have made as much as double their money. ... [o]ver a 6–month period of time." In fact, they received their $10,000.00 back without profit after about eight months.

Appellant took Joe Lopez, the president of SWIS, to meet the Brackeys and testified that, "I turned them over to Joe Lopez." He told them that Joe Lopez knew the seafood business and that Joe Lopez was a person they could trust. Appellant was present with the Brackeys when they went to check some sample lobster tails from Maine. The Brackeys ordered $16,000.00 worth of the lobster tails through SWIS. Appellees spent considerable time and money arranging the sale of the lobster tails. No money was ever returned and no lobster tails were ever received. Appellant did not advise them that there was a risk of not ever getting the lobster tails.

Next, Appellees gave SWIS $59,000.00 to purchase shrimp of a specific size and quality. There were no shrimp meeting such specifications in Brownsville. Appellees protected their initial expenditure by paying an additional $15,000.00 for a smaller size of shrimp. They also had to pay $7,700.00 storage to get the shrimp released. The Brackeys suffered a loss of $53,770.44 on that transaction.

Of the $59,000.00 paid to SWIS, only $52,000.00 had arrived in Brownsville. William Brackey called the Appellant in this regard and stated, in effect, that if he did not get the $7,000.00 difference back immediately, "I will call a Sheriff on Mr. Joe Lopez." At a meeting at Surety Bank, Joe Lopez appeared with $7,040.00 cash in bills of twenty and one-hundred-dollar denominations and poured them on the table.

The jury heard Roger Brackey testify that after the meeting with Appellant and Mrs. Brackey, he continued to meet with Appellant regarding the seafood business. He also told the jury that in regard to the lobster tail transaction, no one had warned him of the risk of never receiving the product. His fear of repetition of the lobster tail fiasco, compelled him to stay in Brownsville for two months to attempt to salvage that investment. He did say that Appellant tried to help straighten out the last shrimp deal and after talking to Appellant, he decided to bring the shrimp back to El Paso and sell the shrimp in small portions. In that way, he realized a return of $58,203.00 out of his total expenditure of $111,973.44. That total did not include the $7,700.00 he had paid to get the shrimp released from storage. Roger Brackey agreed that during the siege in Brownsville, he "slept with the shrimp" and "lived at the cold storage."

In William Brackey's appearance before the jury, he testified that he first sought accounting services from Appellant and investment advice regarding the auto detailing business. Appellant then interested him in the seafood business. In regard to the first $10,000.00 investment in the seafood business, he testified, "as far as I was concerned, you know, the money was being protected by Joe Dominguez. The gentleman had approached me with a potential business investment, and I put money with his money." Later, he said, "I did nothing without Joe's approval." He relied on him in setting up Brackey Enterprises, Inc. Appellant assured him of a large return on the initial $10,000.00 investment. It was Dominguez who had sent Joe Lopez to him and, thereafter, he relied on Joe Lopez and his brother, Roger Brackey. In regard to the last shrimp deal, William Brackey testified that Appellant assured him at all times, "I mean, I trusted Joe. I mean, he assured me that that money would be forth coming [sic] you know, just daily, every day." It was William Brackey who, in regard to the $7,000.00 unaccounted for amount out of the $59,000.00 advance, called Appellant and threatened to "call a Sheriff on Mr. Joe Lopez."

■ Appellant's Point of Error No. One asserts there was no evidence or insufficient evidence to support the jury's finding of a fiduciary relationship. In addition to the business relationship between Joe Dominguez and William Brackey already treated, the evidence shows that the two had become good social friends. William Brackey brought in his brother, Roger Brackey, and Appellant undertook to be the accountant for the new Brackey Enterprises, Inc. As the Court said in *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1963):

> The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved.

Where a party is accustomed to being guided by the judgment or advice of another in legal and accounting matters relating to income taxation, and there exists a long association in a business relationship, as well as a personal friendship, the first party is justified in placing confidence in the belief that the other party will act in his best interest. Under these circumstances, a fiduciary relationship has been held to exist. *Kalb v. Norsworthy*, 428 S.W.2d 701, 705 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ). "A confidential relationship exists where one party is in fact accus-

tomed to being guided by the judgment or advice of the other, or is justified in placing confidence in the belief that such party will act in its interest." *Thames v. Johnson*, 614 S.W.2d 612, 614 (Tex.Civ.App.—Texarkana 1981, no writ). Applying our review standards previously set forth, as to the contentions of "no" and "insufficient" evidence, Point of Error No. One is overruled.

■ We will consider together Points of Error Nos. Two, Three and Four lodged in the evidentiary points bearing those numbers. These points concern the jury's findings that Appellant assured Appellees they could rely on SWIS to provide adequate, professional services, that Appellant breached his fiduciary duty and that the assurances were the producing cause of any damages. Appellant, in addition to being Appellees' CPA, was also vice president and director of SWIS, Inc. It was he who introduced Joe Lopez, the president of SWIS, to the Brackeys and "turned the Brackeys over" to Lopez. He represented that Joe Lopez knew the seafood business and could be relied upon. Appellees were made so confident by the assurances, that in spite of the disappointing $10,000.00 shrimp deal, and the $16,000.00 lobster deal being questioned, they proceeded to advance another $59,000.00 on the ill-fated Brownsville shrimp transaction. Appellees had decided to invest after having numerous meetings with Appellant and after receiving assurances about the company and the seafood business. Appellant continually reassured Appellees he would work out the problems as they arose. Assurances that something will be done when followed by a failure to do anything, or have it done, can constitute evidence that the initial representations are misrepresentations. *Great American Homebuilders, Inc. v. Gerhart*, 708 S.W.2d 8, 11 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Considering the evidence before the jury, including that heretofore set forth, and applying the applicable standards, Points of Error Nos. Two, Three and Four are overruled.

■ Point of Error No. Five argues there was no evidence or insufficient evi-

dence to support the jury's finding that Appellant made such representations inquired about in issues Eleven through Fifteen. Appellant made representations to Appellees regarding SWIS. There was evidence that Dominguez represented SWIS, was in the seafood brokerage business, and was in it on a "very, very" large scale, that Joe Lopez was knowledgeable in the business and could be instructive to the Brackeys. He vouched for the trustworthiness of Joe Lopez. He turned the Brackeys over to Joe Lopez. As an officer, shareholder and director of SWIS, it was Appellant's duty to "know if his statements are true." *Lone Star Ford, Inc. v. McGlashan*, 681 S.W.2d 720, 723 (Tex.App.—Houston [1st Dist.] 1984, no writ). Considering the evidence bearing on this point and applying the standards previously set forth, Point of Error No. Five is overruled.

■ Point of Error No. Six claims there was no evidence or insufficient evidence to support the jury's finding that Appellant's action was unconscionable in regard to the lobster tail transaction and the last shrimp transactions. Appellant contends SWIS was not liable for misrepresentations made which induced Appellees to invest in SWIS because Appellant received no compensation or consideration. The president of SWIS and the associate of Appellant retained $7,000.00 of Appellees' money. This sum was returned when Appellees threatened to call the sheriff. There was also testimony that Appellant hoped to profit down the road, if not initially. There is evidence from which the jury could find that Appellant used his relationship with Appellees to encourage Appellees to invest in SWIS. Appellees initially had no knowledge of the seafood business and relied on Appellant's assurances and financial advice. Appellees urge that the evidence shows Appellant took advantage of the Appellees' limited knowledge, and this appears to be borne out by the record. This is enough to establish unconscionable conduct (taking advantage of a person to a grossly unfair degree). *Chastain v. Koonce*, 700 S.W.2d 579 (Tex.1985). Considering the evidence bearing on Point of Error No. Six in the record, and applying

the standards set forth, Point of Error No. Six is overruled.

■ Point of Error No. Seven asserts the trial court erred in adjudging Appellant individually liable as there is no evidence or insufficient evidence to support Appellant's involvement in the transactions. A corporate agent may be held liable individually if he makes false representations to consumers. *Weitzel v. Barnes,* 691 S.W.2d 598, 601 (Tex.1985); *Permian Petroleum Company v. Barrow,* 484 S.W.2d 631, 634 (Tex. Civ.App.—El Paso 1972, no writ). "Directors are personally liable to those who are damaged by their false representation though ignorantly made, if it concerns matters pertaining to the corporation of which they should have been officially cognizant." *Barclay v. Johnson,* 686 S.W.2d 334, 337 (Tex.App.—Houston [1st Dist.] 1985, no writ). Considering all of the evidence bearing on Point of Error No. Seven and the standards previously enunciated, Point of Error No. Seven is overruled.

■ Point of Error No. Eight urges error in finding Appellees were consumers as a matter of law. "[A] person need not seek or acquire goods or services furnished by the defendant to be a consumer as defined in the DTPA." *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 541 (Tex. 1981). Appellees were consumers of Appellant's services, his financial advice. They were consumers of SWIS's services, as a broker and its goods, in that they attempted to make three seafood purchases through SWIS. They were utilizing SWIS's already established business contacts. Considering the evidence in the record and Tex.Bus. & Com.Code Ann. sec. 17.45(4) (Vernon 1987), Point of Error No. Eight is overruled.

The judgment is affirmed.