James E. **ELBAOR**, M.D., Appellant,

v.

J. Richard **SANDERSON**, Appellee.

No. 2–90–059–CV.

Court of Appeals of Texas,
Fort Worth.

Oct. 16, 1991.

Rehearing Overruled Nov. 26, 1991.

Hill, Heard, Gilstrap, Goetz & Moorhead, Frank Gilstrap, Arlington, for appellant.

Douglas, Kressler & Wuester, P.C., Rick K. Disney, Fort Worth, for appellee.

Before HILL, LATTIMORE and DAY, JJ.

## OPINION

LATTIMORE, Justice.

This is an appeal by James E. Elbaor, M.D., plaintiff in the trial court, from a finding that the Texas Deceptive Trade Practices Act ("DTPA") action brought by Elbaor was groundless, that it was brought in bad faith, and that it was brought for the purpose of harassment. TEX.BUS. & COM.CODE ANN. §§ 17.41–17.826 (Vernon 1987). The trial court entered judgment in favor of the defendant, J. Richard Sanderson, on his counterclaim in the amount of the attorneys' fees found by the jury.

Appellant's first three points of error assert that the trial court erred in concluding that Elbaor's DTPA suit was: (1) groundless; (2) brought in bad faith; and (3) brought for purposes of harassment. Elbaor's fourth point of error maintains that the trial court erred in rendering judgment absent jury findings.

We affirm.

## Statement of Facts

Appellant, Elbaor, a physician, retained a Dallas accountant named Ron Wignall in 1984. After Elbaor expressed an interest in making financial investments, Wignall contacted Sanderson, an attorney and CPA, who had syndicated numerous oil and gas wells.

Sanderson in turn called Jack Park who was vice president of Parcoil Corporation, an oil and gas company with operations in West Virginia. Parcoil had been actively drilling for gas in Barbour County, West Virginia, and Sanderson had syndicated wells for the company there. After discovering that Parcoil had a prospect or a "drillable deal," Sanderson began preparing the Private Placement Memorandum ("PPM"). The PPM proposed to create a limited partnership between Elbaor, as a limited partner, and Sanderson, as a general partner, for the purpose of participating with Parcoil in drilling and, if successful, in completing one well in Barbour County, West Virginia. On December 2, 1984, Elbaor signed the PPM and paid $146,000.00 for his interest in the partnership. The PPM provided that "THIS OFFERING INVOLVES A HIGH DEGREE OF RISK." Also on December 2nd, Elbaor signed a Statement of Potential Investor Suitability and a Subscription Agreement manifesting in both that he had read and understood the PPM.

On March 25, 1985, Parcoil commenced operations and the ensuing well was turned "on stream" on April 20, 1985. The well initially came in at 125,000 mcf per day

with 100,000 mcf actual production but declined to 40,000 mcf actual production per day within four months. At time of trial, the well was producing 20,000 to 30,000 mcf per day. The PPM stated that a successfully completed well should stabilize at "125 Mcf to 150 Mcf" per day.

On January 7, 1986, Elbaor demanded return of his $146,000.00 investment. Then, on May 21, 1987, Elbaor filed suit against Sanderson under the DTPA alleging that Sanderson had warranted orally and in writing that the well: (1) was already producing; (2) was a viable and excellent means to earn money; and (3) would reduce the income tax liability of Elbaor. Appellant also pled that he was told by Sanderson that the investment would return to him between $800,00.00 and $1,000,-000.00 over a ten-year period and that this promise was later changed by Sanderson in writing to a guarantee of $595,000.00 over a ten- to fifteen-year period. The jury returned a verdict finding that Sanderson did not falsely represent the drilling program, nor did Sanderson fail to disclose to Elbaor information concerning the drilling program which was known at the time of the transaction. The court rendered judgment that Elbaor take nothing.

The court then found that Elbaor's cause of action was groundless, that it was brought in bad faith, and that it was brought for the purpose of harassment. The court rendered judgment against Elbaor in the amount of Sanderson's attorneys' fees as found by the jury.

### Appellant's Points of Error

In his first three points of error, Elbaor complains that the trial court erred in concluding that the suit was groundless, because the case had a basis in law and fact; that the trial court erred in concluding that the case was brought in bad faith; and that the trial court erred in concluding that the suit was brought for purposes of harassment.

TEX.BUS. & COM.CODE ANN. § 17.50(c) (Vernon 1987) provides as follows:

On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs.

*Id.*

The trial court, not the factfinder, must determine the existence of groundlessness, bad faith, and harassment under section 17.50(c) of the DTPA. *Donwerth v. Preston II Chrysler–Dodge,* 775 S.W.2d 634, 637 (Tex.1989). Appellate review of a trial court determination that a party's action was groundless, brought in bad faith, or brought for the purpose of harassment is a question of law under an abuse of discretion standard. *Donwerth,* 775 S.W.2d at 637 n. 3. An appellate court may reverse a trial court for abuse of discretion only if, after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). *Simon v. York Crane & Rigging Co.,* 739 S.W.2d 793, 795 (Tex.1987); *Landry v. Travelers Ins. Co.,* 458 S.W.2d 649, 651 (Tex.1970). This court is required to view the evidence in the light most favorable to the trial court's action, and indulge in every presumption which would favor the trial court's action. *Adams v. Reagan,* 791 S.W.2d 284, 287 (Tex.App.—Fort Worth 1990, no writ); *Parks v. U.S. Home Corp.,* 652 S.W.2d 479, 485 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 242.

"Groundless" under the DTPA has the same meaning as "groundless" under rule 13 of the Texas Rules of Civil Procedure: "[N]o basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Donwerth,* 775 S.W.2d at 637. First, Elbaor asserted in his pleadings that Sanderson had represented that the gas

well in question was already producing when Elbaor paid the $146,000.00 for his interest in the limited partnership on December 2, 1984. Yet, on cross-examination Elbaor admitted that Sanderson did not represent to him that the well was producing in December of 1984. Second, Elbaor maintained in his original petition that Sanderson had made written and oral warranties that the well was "a viable and excellent means to earn money." On December 2, 1984, the day on which Elbaor paid for his investment, he also signed a "Statement of Potential Investor Suitability" which represents in paragraph 12 that no representations, warranties, or guarantees have been made regarding the profits or losses to be realized from said investment. As a side note, the jury at trial found by a preponderance of the evidence that Sanderson did not represent that the drilling program in question had characteristics or benefits which it did not have. Third, Elbaor asserted in his petition that Sanderson misrepresented the fact that the investment would reduce his tax liability. However, on cross-examination by Sanderson's attorney, Elbaor admitted that he received a $57,453.00 tax credit on his 1984 Internal Revenue Service ("IRS") tax return and said deduction was never disallowed by the IRS. Elbaor's final claim in his pleadings was that Sanderson made a written, affirmative warranty and guarantee that the well would return $595,000.00 over a ten- to fifteen-year period after orally representing that the well in question would return to him between $800,000.00 and $1,000,000.00 over a ten year period. First, we do not find in the record where Sanderson made a written, affirmative warranty or guarantee that the well would return $595,000.00. Second, Elbaor stated at trial that he did not realize that there was any risk involved in this drilling operation; yet, Elbaor's own expert, William Burke, testified at trial that all oil and gas investments have "lots of risk" and that such is common knowledge. The record shows that Dr. Elbaor had made prior investments in: a West Texas oil well; an oil well in Wichita Falls; and three mining operations in Brazil. Further, Elbaor signed a "Statement of Potential Investor Suitability" as well as a "Subscription Agreement" on December 2, 1984, each of which outline the risks of the investment. Based upon the record as outlined above, this court finds that the trial court could reasonably conclude that Elbaor's claim had no basis in fact and thus was groundless.

"Bad faith" [1] should be given its ordinary meaning when used in the context of a DTPA case. *Smith v. Smith*, 757 S.W.2d 422, 427 (Tex.App.—Dallas 1988, writ denied). The DTPA itself offers no definition, hence, we must accept that the legislature intended that the term be used in its ordinary sense. *Id.* To prove "bad faith," the appellee must have shown that the claim by Elbaor was motivated by a malicious or discriminatory purpose. *Central Texas Hardware v. First City*, 810 S.W.2d 234, 237 (Tex.App.—Houston [14th Dist.] 1991, n.w.h.). As reviewed above, Elbaor claimed in his trial court petition that Sanderson made oral and written warranties that the well was already producing. Elbaor later admitted during cross-examination that Sanderson had not represented that the well was producing at that time yet Elbaor failed to amend his pleadings prior to trial and in fact went to trial with an inaccurate petition. Also, Elbaor's petition maintained that Sanderson had falsely represented this investment would reduce Elbaor's income tax liability. Once again, Elbaor failed to amend his petition and then admitted that he received a $57,453.00 tax credit on his 1984 IRS tax return. Elbaor also testified on direct examination that he had not read the PPM, yet on cross-examination he qualified said representation by maintaining that he had not read the "whole" PPM. The trial record shows that Elbaor signed a "Statement of Potential Investor Suitability" as well as a "Subscription Agreement" in which Elbaor rep-

---

1. The term "bad faith" is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. *See* Black's Law Dictionary 127 (5th ed. 1979).

resented that he had read and understood the PPM. Elbaor also testified on direct examination that Sanderson had promised him that he "can't lose." Yet Elbaor signed the "Statement of Potential Investor Suitability" which specifically states that "[a]t no time has it been represented, guaranteed or warranted to me by you ... a percentage of profit and/or amount or type of consideration, profit or loss to be realized, if any, as a result of this investment." Since, this court is required to view the evidence in the light most favorable to the trial court's action, and indulge in every presumption which would favor such action, we find that the trial court after hearing all the testimony and weighing the credibility of the witnesses could reasonably have concluded that Elbaor's suit was filed in bad faith. Points of error one and two are overruled.

Since we have determined that the record does not show that the trial court acted arbitrarily, unreasonably, or without reference to any guiding rules and principles in concluding that Elbaor's suit was groundless and in bad faith, we need not address appellant's third point of error regarding harassment.

In his fourth point of error, appellant Elbaor asserts that the trial court erred in rendering judgment absent jury findings on the questions of groundlessness, bad faith, and harassment. However, the court, not the factfinder, is charged with determining the existence of groundlessness, bad faith, and harassment under section 17.50(c) of the DTPA. Tex.Bus. & Com. Code Ann. § 17.50(c); *Donwerth*, 775 S.W.2d at 637. Elbaor's point of error number four is therefore overruled.

The judgment of the trial court is affirmed.