MEDICAL SPECIALIST GROUP,
P.A., d/b/a Saratoga Medical
Center, Appellant,

v.

RADIOLOGY ASSOCIATES,
L.L.P., et al., Appellees.

No. 13–02–275–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 31, 2005.

William N. Woolsey, Law Office of William N. Woolsey, PC, Corpus Christi, for appellant.

John C. Holmgreen, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellees.

Before Justices HINOJOSA, YAÑEZ, and GARZA.

## OPINION

Opinion by Justice GARZA.

Appellant, Medical Specialist Group, P.A., d/b/a Saratoga Medical Center ("Saratoga"), sued appellees, Radiology Associates, L.L.P., and each of its individual partners (collectively "Radiology Associates"), for breach of fiduciary duty, conversion of a trade secret, and antitrust violations. Radiology Associates counterclaimed that Saratoga's antitrust claims were groundless and brought in bad faith and requested attorney's fees and litigation expenses. Prior to trial, Saratoga abandoned its antitrust claims. A jury found against Saratoga, and the trial court signed a take-nothing judgment. On appeal, Saratoga raises four legal and factual sufficiency issues. In a cross-appeal, Radiology Associates asserts the trial court erred in finding that Saratoga's antitrust claims were not groundless and brought in bad faith. We affirm.

## A. FACTUAL BACKGROUND

Saratoga is owned and operated by Dr. Jairo Puentes. In June 1997, Saratoga entered into a contract with Radiology Associates to conduct and interpret radiological procedures performed at Saratoga's facility. According to the contract, Radiology Associates had the exclusive right to read Saratoga's MRI films during the contract term. The contract did not contain a non-compete clause, nor was such a clause ever discussed between the parties.

In early 1998, Dr. Tamara Haygood, a partner in Radiology Associates, obtained a computer printout from Saratoga's MRI technician that included the number of MRI procedures performed by Saratoga in November and December 1997, and the names of the referring physicians. In April 1998, Radiology Associates purchased an MRI machine and started performing MRI procedures. Radiology Associates continued to perform radiological services for Saratoga until December 31, 1998, the end of the contract term.

## B. LEGAL AND FACTUAL SUFFICIENCY

In its second and third issues, Saratoga contends the evidence is legally insufficient to support the jury's answers to Questions One and Three of the court's charge, and the evidence conclusively established, as a matter of law, the alternative answers. In its first and fourth issues, Saratoga contends the jury's answers to Questions One and Three of the court's charge are contrary to the great weight and preponderance of the evidence and are manifestly unjust.

### 1. *Standard of Review*

When a party attacks the legal sufficiency of an adverse finding on which it has the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Pearson v. DeBoer*, 99 S.W.3d 273, 275 (Tex.App.-Corpus Christi 2003, no pet.). When we review a "matter of law" challenge, we first examine the record for evidence that supports the finding and ignore all evidence to the contrary. *Dow Chem. Co.*, 46 S.W.3d at 241; *Pearson*, 99 S.W.3d at 275. If there is no evidence to

support the finding, we examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem. Co.*, 46 S.W.3d at 241; *Pearson*, 99 S.W.3d at 275. The issue should be sustained only if the contrary proposition is conclusively established. *Dow Chem. Co.*, 46 S.W.3d at 241; *Pearson*, 99 S.W.3d at 275.

■■■ When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, the party must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Pearson*, 99 S.W.3d at 275. We must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co.*, 46 S.W.3d at 242; *Pearson*, 99 S.W.3d at 275. If we set aside a verdict, we must "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Dow Chem. Co.*, 46 S.W.3d at 242 (quoting *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 630 (Tex.1986)); *Pearson*, 99 S.W.3d at 275.

### 2. *Fiduciary Relationship*

Question One of the trial court's charge asked the jury: "Did a relationship of trust and confidence exist between Jairo Puentes, M.D., and Radiology Associates before June 17, 1997 and between Saratoga Medical Center and Radiology Associates after said date?" The jury answered "No" to this question.

Saratoga contends the evidence presented to the jury conclusively established, as a matter of law, that Dr. Puentes held Radiology Associates in a position of trust and confidence to act in his best interests and in the best interest of Saratoga. Saratoga also contends the jury's answer to Question One is contrary to the great weight and preponderance of the evidence and is manifestly unjust.

■■■ Whether a confidential or fiduciary relationship exists is normally a question of fact to be decided by the jury. *Procom Energy, L.L.A. v. Roach*, 16 S.W.3d 377, 382 (Tex.App.-Tyler 2000, pet. denied); *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex.App.-Houston [14th Dist.] 1997, pet. denied); *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex.App.-Houston [1st Dist.] 1996, no writ). When the issue is one of no evidence or conclusive evidence, the issue is a question of law. *Farah*, 927 S.W.2d at 675.

■■■ If not a recognized formal fiduciary relationship, the question of whether an informal fiduciary relationship exists is to be determined from the actualities of the relationship between the persons involved. *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962); *Dominguez v. Brackey Enters., Inc.*, 756 S.W.2d 788, 791 (Tex. App.-El Paso 1988, writ denied). Such a relationship may arise where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely personal one. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex.1997); *see Thigpen*, 363 S.W.2d at 253. However, a fiduciary relationship is an extraordinary one and will not be lightly created; mere subjective trust does not convert an arms-length transaction into a fiduciary relationship. *See Thigpen*, 363 S.W.2d at 253; *Schlumberger Tech. Corp.*, 959 S.W.2d at 177; *see also Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex.1992) (stating "the fact that one businessman trusts another, and relies upon his promise

to perform a contract, does not arise to a confidential relationship"). Instead, to impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit. *See Schlumberger Tech. Corp.*, 959 S.W.2d at 177; *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (1995).

 Saratoga contends that the evidence presented to the jury conclusively established that a fiduciary relationship existed before, and apart from, the contract that is the basis of this suit. Specifically, Saratoga refers to a period of two and one-half years, beginning in 1988, when Dr. Puentes was the medical director of Rehabilitation Hospital of South Texas and Radiology Associates was responsible for reading images and performing radiology work for the hospital. Saratoga further references Dr. Puentes' participation in two limited partnerships, which also included a few of the individual partners of Radiology Associates.

The first limited partnership, known as C.C. Imaging, Ltd., was created when Columbia's Southside Hospital invited members of the hospital staff to participate in the purchase of an MRI machine. Dr. Puentes testified that he became a limited partner in C.C. Imaging, Ltd. and that C.C. Imaging, Ltd. contracted with Radiology Associates to read MRI examinations at the Southside Hospital. Dr. Puentes stated that based on his experience and knowledge from the time he arrived in Corpus Christi in 1988, he relied upon the physicians of Radiology Associates as being highly qualified and fair, candid, open, and honest in their relationship, and expected that they would place the interests of the machine's investor above their own selfish interests.

Dr. Puentes testified that the second limited partnership, known as the Bay Area Health Care Group, Ltd., was created by Columbia when it decided to build the new Columbia hospital. The Bay Area Health Care Group, Ltd. purchased the MRI machine owned by C.C. Imaging, Ltd. Thus, a partner's percentage interest in C.C. Imaging, Ltd. became an interest in the Bay Area Health Care Group, Ltd. Dr. Puentes testified that Drs. Cook, Hallerman, Strong, and Wilson, all partners in Radiology Associates, were limited partners in the Bay Area Health Care Group, Ltd. Radiology Associates read the images, wrote the reports, and directed the operation of the MRI machine at the hospital. Dr. Puentes testified that he relied on Radiology Associates with regards to the MRI machine in the same manner as he did when it was located at Southside Hospital.

After reviewing the record, we hold the evidence does not establish, as a matter of law, all vital facts in support of a fiduciary relationship. Radiology Associates was not a partner in either limited partnership, and Dr. Puentes' participation in two limited partnerships with a few of Radiology Associates' partners is not evidence of a confidential relationship between Saratoga and Radiology Associates. Because a fiduciary relationship was not conclusively established, Saratoga's legal sufficiency challenge must fail.

Furthermore, the evidence supporting the jury's answer to Question One is not so weak, or against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. Therefore, Saratoga's factual sufficiency challenge must also fail.

### 3. *Trade Secret*

Question Three of the trial court's charge asked the jury: "On the occasion in question, was Saratoga Medical Center's

list of referring doctors and MRI procedures a trade secret of Saratoga Medical Center?" The jury answered "No" to this question.

Saratoga contends the evidence conclusively establishes, as a matter of law, that its list of MRI referring physicians was a trade secret, and the jury's answer to Question Three is wrong. Saratoga also contends the jury's answer to Question Three is contrary to the great weight and preponderance of the evidence and is manifestly unjust.

■■■■■ It is unnecessary, however, to address these contentions because we conclude error, if any, is waived. Rule 38.1(h) of the Texas Rules of Appellate Procedure provides that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP. P. 38.1(h). Failure to cite authority or provide substantive analysis waives an issue on appeal. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 410 (Tex. 1997); *Tex. Dep't of Pub. Safety v. Struve*, 79 S.W.3d 796, 801 n. 6 (Tex.App.-Corpus Christi 2002, pet. denied). Because Saratoga offers no legal analysis and fails to cite any authority supporting these specific issues, we hold that error, if any, is waived. *See McIntyre v. Wilson*, 50 S.W.3d 674, 682 (Tex.App.-Dallas 2001, pet. denied).

Accordingly we overrule Saratoga's first, second, third, and fourth issues.

## C. RADIOLOGY ASSOCIATES' CROSS-APPEAL

Radiology Associates has filed a cross-appeal claiming that the trial court abused its discretion in denying its counterclaim for attorney's fees and in finding that Saratoga's antitrust claims were not groundless and brought in bad faith. Although the trial court denied Radiology Associates' claims for attorney's fees and ex-

penses under both the Texas Free Enterprise and Antitrust Act of 1983 and rule of civil procedure 13, Radiology Associates has only appealed the court's ruling under the Antitrust Act. The following provision of the Antitrust Act therefore governs this case:

> On a finding by the court that an action under this section was groundless and brought in bad faith or for the purpose of harassment, the court shall award to the defendant or defendants a reasonable attorney's fee, court costs, and other reasonable expenses of litigation.

*See* TEX. BUS. & COM.CODE ANN. § 15.21(a)(3) (Vernon 2002).

In our research, we have found only one case applying the relevant provision of the Antitrust Act. *See Wohlfahrt v. HCA Health Servs.*, No. 14–96–381–CV, 1997 WL 603010, 1997 Tex.App. LEXIS 5197 (Houston [14th Dist.] 1997, pet. denied) (not designated for publication). In *Wohlfahrt*, the Fourteenth Court of Appeals applied the supreme court's *Donwerth* precedent, which interpreted a similar provision of the DTPA. *Id.* at *1. *Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex.1989) (interpreting TEX. BUS. & COM.CODE § 17.50(c) and rule of civil procedure 13). The DTPA provision discussed in *Donwerth* is similar, yet not identical, to the relevant provision of the Antitrust Act. *Compare* TEX. BUS. & COM. CODE ANN. § 15.21(a)(3) (Antitrust Act) *with* TEX. BUS. & COM.CODE § 17.50(c) (DTPA). We nevertheless find the *Donwerth* precedent very helpful in this context because, in it, the supreme court explained that the court, not the trier of fact, must determine the existence of groundlessness, bad faith, and harassment, elements which are required under both the Antitrust Act and the DTPA. *Donwerth*, 775 S.W.2d at 637. Because there is an

absence of case law under the relevant provision of the Antitrust Act and because there is well-developed authority under similar provisions of the DTPA and rule of civil procedure 13, we will use this authority to decide whether the trial court abused its discretion in denying Radiology Associates' claim for attorney's fees and expenses.

■ As stated above, a defendant may recover attorney's fees and expenses under the Antitrust Act only if the action "was groundless and brought in bad faith or for the purpose of harassment." TEX. BUS. & COM.CODE ANN. § 15.21(a)(3). We understand this language to mean that the action must be both groundless and brought in bad faith or that the action must be both groundless and brought for the purpose of harassment. It would not be enough for an action to be merely groundless, brought in bad faith, or brought for the purpose of harassment. There must be a combination of groundlessness with either bad faith or harassment. For a better understanding of these requirements, we turn to the case law under similar provisions of the DTPA and rules of civil procedure.

In *Donwerth,* the supreme court stated that "groundless" as used in the DTPA has the same meaning as it does in rule of civil procedure 13: "No basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Donwerth,* 775 S.W.2d at 637. In the context of the DTPA and rule 13, intermediate courts have held that "bad faith" is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes. *Campos v. Ysleta Gen. Hosp.,* 879 S.W.2d 67, 71 (Tex.App.-El Paso 1994, writ denied); *Elbaor v. Sanderson,* 817 S.W.2d 826, 829 (Tex.App.-Fort Worth 1991, no writ). The courts have held that "bad faith" does not exist simply because a party exercises bad judg-

ment or is negligent. *Falk & Mayfield L.L.P. v. Molzan,* 974 S.W.2d 821, 828 (Tex. App.-Houston [14th Dist.] 1998, pet. denied). In *Donwerth,* the supreme court held that, "at the very least, the requirement that the suit be brought 'for purposes of harassment' must mean it was brought for the sole purpose of harassment." *Donwerth,* 775 S.W.2d at 638. Having reviewed other courts' interpretations of similar provisions under the DTPA and rules of civil procedure, we proceed by applying such interpretations to the case before us.

■ The only evidence before the trial court regarding Radiology Associates' claim for attorney's fees and expenses under section 15.21(a)(3) was an affidavit from its counsel. There is no indication in the record or the briefs that the trial court held a hearing to consider the circumstances surrounding the filing of Saratoga's action and the credibility and motives of Saratoga and its counsel in filing the action. Nor is there any indication anywhere in the record that Radiology Associates ever objected to the trial court's failure to hold such a hearing. Although the court may determine whether an action is groundless based on the totality of the tendered evidence produced, the court cannot determine bad faith or harassment based solely on such evidence. *See Myer,* 779 S.W.2d at 808. Without hearing evidence on the circumstances surrounding the filing of the pleading and the signer's credibility and motives, the trial court has no evidence to determine whether the party or its attorneys filed the pleading in bad faith or to harass. *Davila v. World Car Five Star,* 75 S.W.3d 537, 544 (Tex.App.-San Antonio 2002, no pet.); *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 856 S.W.2d 194, 205 (Tex. App.-Dallas 1993, no writ). Accordingly,

Radiology Associates' appeal can be properly overruled on this basis alone.

■ Nevertheless, in recognition that the case law above interprets provisions other than the one in the antitrust act, we find it judicious to note that, even if the lack of a hearing were not fatal, the allegations of the affidavit do not establish that Saratoga acted in bad faith or for the sole purpose of harassment. The affidavit does not discuss the circumstances surrounding the action's filing or the credibility and motives of the signer, except in an indirect, brief, and conclusory manner. It states

> Saratoga Medical Center's initial and continued assertion of these claims was groundless and brought in bad faith or for the purpose of harassment. Saratoga Medical Center's defiance of the Court's explicit order that it plead the most fundamental distinction (horizontal vs. vertical) involving its 15.05(a) claim and its explicit statement that the claims were "strategic," plainly show that the pleadings asserting these claims were groundless and brought in bad faith or groundless and brought for the purpose of harassment. Saratoga Medical Center certainly knew the effect of its allegation of these claims, knew that they would cause the defendant to expend great resources in response.

The affidavit appears to base its assertion that Saratoga's claim was brought in "bad faith or for the purpose of harassment" on three allegations: (1) Saratoga failed to re-plead its claims after being ordered to do so; (2) after the verdict, Saratoga's counsel stated that the claims were "strategic"; and (3) Saratoga knew that the claims would cause the defendant to expend great resources. Having reviewed the affidavit carefully, we fail to see how these allegations warrant any finding of bad faith or harassment.

■ Failure to re-plead a cause of action, even following a court order to do so, does not prove that a party consciously committed a wrong for dishonest, discriminatory, or malicious purposes. See Campos, 879 S.W.2d at 71 (defining bad faith). A court order to re-plead may prove that an attorney exercised poor judgment in drafting his or her pleadings, but poor judgment does not amount to bad faith. See Molzan, 974 S.W.2d at 828. A refusal to re-plead after a court order to do so may also amount to poor judgment, especially if it results in dismissal of the claim, but again, poor judgment is not tantamount to bad faith. See id. Taken alone, such actions simply do not prove a wrong committed for dishonest, discriminatory, or malicious purposes.

For similar reasons, failure to re-plead also does not prove that the action was brought for the sole purpose of harassment. See Donwerth, 775 S.W.2d at 637 (defining harassment). Failure to re-plead tells very little, if anything, about why the action was originally filed. It certainly does not eliminate all reasons other than harassment.

Radiology Associates argues that Saratoga's failure to re-plead should be considered along with its statement that the claims were "strategic" and its knowledge that the claims would be costly to defend, but these considerations do not change our view of the evidence. First, the word "strategic" is not very helpful. The record does not reveal the context in which the word was used. The affidavit states that counsel for Saratoga used it during a post-verdict argument, but the affidavit fails to specify how it was used. Apparently, Radiology Associates would like the word "strategic" to be understood in the worst sense possible, implying dishonesty, discrimination, or malice or that the action was brought for the sole purpose of

harassment. Such an inferential leap can be supported by no more than speculation and results-oriented logic. The word "strategic" alone simply cannot establish bad faith or harassment, even if it is used to describe claims that were later dropped or never re-plead.

Second, the affidavit provides no basis for this Court to conclude that Saratoga knew the claims "would cause the defendant to expend great resources in response." Nowhere in his affidavit does counsel for Radiology Associates establish that he had personal knowledge or was otherwise qualified to testify to Saratoga's knowledge of his client's litigation costs. Counsel's statement is purely conclusory on that point.

Even if it were established that Saratoga knew its action "would cause the defendant to expend great resources in response," such knowledge would be insufficient to prove that Saratoga wrongfully filed its action for dishonest, discriminatory, or malicious purposes or that it did so solely for the purpose of harassment. Essentially, Radiology Associates argues that Saratoga acted in bad faith or for the sole purpose of harassment because it filed expensive claims against Radiology Associates and later dropped them in favor of other claims. We are unwilling to draw such a conclusion based on the tenuous arguments and speculative evidence before this Court. Apparently, the trial court was equally reluctant to do so, and we believe its ruling was far from an abuse of discretion.

In sum, Radiology Associates failed to establish that Saratoga brought its claims in bad faith or for the sole purpose of harassment. Thus, even if Radiology Associates had put on sufficient evidence to prove the claims were groundless, it was not entitled to attorney's fees and expenses under the Antitrust Act. We therefore hold that the trial court did not abuse its discretion in denying Radiology Associates' claim for attorney's fees and expenses.

The dissent suggests that the outcome of this case should be different solely because Radiology Associates was the only party to produce evidence regarding Saratoga's bad faith. The dissent's basis for this conclusion is a misapplication of *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881–82 (Tex.1990) (per curiam), a case involving the amount of attorney's fees and not bad faith or harassment

In *Ragsdale*, the Texas Supreme Court reviewed whether the trial court abused its discretion by awarding only $150 in attorney's fees when the uncontroverted evidence presented at trial showed that the attorney's fees totaled $22,500. *Id.* The supreme court noted that the amount of attorney's fees was an issue for the court as the trier of fact and listed several factors that the court should take into account in making its determination. *See id.* at 881.

As a preliminary matter, the court stated the general rule that "the testimony of an interested witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury." *Id.* at 882. It then articulated an exception to the general rule: "[W]here the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." *Id.* The court noted that the present case fell within the exception to the general rule and proceeded to award attorney's fees in the amount of $22,500. *See id.*

The dissent would use *Ragsdale* to establish bad faith "as a matter of law" because Saratoga failed to produce evidence to controvert the affidavit submitted by Radiology Associates. This stretches the *Ragsdale* precedent beyond its original context, which was the amount of reasonable attorney's fees. Even in the *Ragsdale* opinion, the supreme court acknowledges the limited applicability of its precedent, cautioning that it did "not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed." *Id.* (emphasis added). Indeed, the court's subsequent invocation of *Ragsdale* has been limited to issues regarding the amount, rather than the availability of, attorney's fees. *See, e.g., Brown v. Bank of Galveston, N.A.,* 963 S.W.2d 511, 515–16 (Tex.1998). We are unaware of any case in which supreme court has used *Ragsdale* to establish the existence of bad faith or harassment.

The intermediate courts have mostly restricted their application of *Ragsdale* to the limited issue of whether the uncontested evidence established reasonable and necessary attorney's fees, an issue which is entirely distinct from whether attorney's fees are available because of bad faith or harassment. Although some intermediate courts have applied *Ragsdale* outside the context of attorney's fees, these instances have been relatively rare and typically involved questions for the trier of fact such as the amount of damages, not issues for the court, such as bad faith and harassment. *See Donwerth,* 775 S.W.2d at 637 (explaining that the court, not the trier of fact, must determine the existence of groundlessness, bad faith, and harassment).

Even if the applicability of *Ragsdale* were not limited to the amount of attorney's fees, the supreme court never intended for the limited exception to apply in all instances where evidence is uncontradicted. As the supreme court explained in Ragsdale, "[E]ven though the evidence might be uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact." *Ragsdale,* 801 S.W.2d at 882. The dissent ignores this caveat entirely, choosing instead to accept the affidavit unconditionally because Saratoga did not present contradictory evidence and because the affidavit "is clear, direct and positive evidence." But that is not enough even under *Ragsdale,* which requires that the testimony of an interested witness not only be uncontradicted by any other witness but also uncontradicted by "attendant circumstances." *Id. Ragsdale* also mandates that the uncontradicted testimony be not only clear, direct, and positive but also "free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon." *Id.* The dissent glosses over these requirements and ultimately fails to discuss or apply them in suggesting that the affidavit established Saratoga's bad faith as a matter of law. The dissent would thus turn the limited exception articulated in *Ragsdale* into a complete reversal of the general rule by holding that uncontradicted evidence from an interested party which is clear, direct, and positive should always be accepted as true as a matter of law. We will not endorse such an interpretation of supreme court precedent.

The judgment of the trial court is affirmed.

Concurring and Dissenting Opinion by Justice FEDERICO G. HINOJOSA.

Concurring and Dissenting Opinion by Justice HINOJOSA.

I concur with that portion of the majority's opinion overruling Saratoga's four is-

sues on appeal. However, I respectfully dissent from that portion of the majority's opinion holding that Radiology Associates is not entitled to attorney's fees and expenses under the Texas Free Enterprise and Antitrust Act of 1983 ("the Act")[1] because I conclude that Radiology Associates produced sufficient evidence to establish that Saratoga's antitrust claims were both (1) groundless and (2) brought in bad faith or for the sole purpose of harassment. Accordingly, I would sustain Radiology Associates' cross-appeal and would render judgment for the amount of attorney's fees and expenses that Radiology Associates incurred in defending against Saratoga's antitrust claims.

I agree with the majority that the only evidence before the trial court regarding Radiology Associates' claim for attorney's fees and expenses under section 15.21(a)(3) of the Texas Business and Commerce Code is an affidavit from its counsel. The majority notes that there is no indication that the trial court held a hearing to consider the circumstances surrounding the filing of Saratoga's action and the credibility and motives of Saratoga and its counsel, and furthermore, there is no indication that Radiology Associates ever objected to the failure to hold such a hearing. However, I note the record shows that at the end of the ninth day of a ten-day trial, the following exchange occurred between counsel for Radiology Associates and the trial court:

> Counsel: Your honor, the reason that I rested subject to that other evidence, is that, we do have a counterclaim for attorney's fees. There's specifically a counterclaim under the Texas Free Enterprise and Anti–Trust Act, and it's gonna require the Court to hear evidence, because the finding is to be

made by the Court and not by the jury.

> The Court: Very well.

* * * *

> The Court: Well, since those are going to be matters for the Court, and I can hear those matters later on and any objections at that time.

The record is devoid of any reason why the requested hearing was not held, but only supplies us with Radiology Associates' "Offer of Proof in Form of Affidavit of John C. Holmgreen, Jr. in Support of Counterclaim for Attorneys' Fees and Expenses."

I also find the majority's reliance on *Davila v. World Car Five Star*, 75 S.W.3d 537, 544 (Tex.App.-San Antonio 2002, no pet.) and *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 205 (Tex.App.-Dallas 1993, no writ), for the proposition that "without hearing evidence on the circumstances surrounding the filing of the pleading and the signer's credibility and motives, the trial court has no evidence to determine whether the party or its attorneys filed the pleading in bad faith or to harass," to be misplaced. Although *Davila* is a case applying the similar DTPA provision, I note that the San Antonio court cited *New York Underwriters* for this proposition. However, *New York Underwriters* is a case applying Rule 13 sanctions, *see New York Underwriters Ins. Co.*, 856 S.W.2d at 205, and as the Dallas court pointed out, Rule 13 requires the trial court to hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person signing the groundless petition. *See* Tex.R. Civ. P. 13. By contrast, section 15.21(a)(3) has no such requirement. *See* Tex. Bus. & Com.Code Ann. § 15.21(a)(3) (Vernon 2002).

1. *See* Tex. Bus. & Com.Code Ann. ch. 15 (Vernon 2002).

Finally, I disagree with the majority's conclusion that the allegations of the affidavit do not establish that Saratoga acted in bad faith or for the sole purpose of harassment. The affidavit evidence shows that in its original petition, Saratoga generally alleged violations of sections 15.05(a), (b), (c), (d), and (I) of the Act. Radiology Associates filed special exceptions to Saratoga's original petition and requested that it specifically identify whether its claims under the Act involved a "horizontal or vertical" conspiracy. Subsequently, on May 10, 2001, Saratoga filed a first amended petition and omitted its antitrust claims. However, on June 11, 2001, Saratoga filed a second amended petition and reasserted its antitrust claims. Radiology Associates again filed special exceptions on the same grounds it had asserted against Saratoga's original petition. On June 27, 2001, the trial court ordered Saratoga to specifically plead whether it was asserting a horizontal or vertical trade restraint. Saratoga never complied with the trial court's order.

The evidence shows that the case was set for trial, and Radiology Associates continued with discovery. Also, Radiology Associates filed a motion for summary judgment on both traditional and no-evidence grounds, regarding Saratoga's claims under the Act. The trial court heard the motion on the eve of trial. At the hearing, Saratoga informed the trial court that it no longer intended to pursue its claims under the Act and abandoned them.

The record shows that Saratoga presented no evidence during the trial that Radiology Associates had violated any portion of the Act. Even though it had abandoned its antitrust claims and had presented no evidence of any violation of the Act, Saratoga submitted a proposed jury charge that included questions regarding its abandoned antitrust claims. At a post-verdict hearing, Saratoga argued that its invocation and subsequent abandonment of antitrust claims was strategic.

In his affidavit, Radiology Associates' counsel also set forth his qualifications, his opinion regarding reasonable attorney's fees, and the basis for his opinion. He testified that his fees for the defense of the case totaled $460,087.00, and approximately forty percent of these fees were directly related to Saratoga's antitrust claims. Therefore, attorney's fees directly related to Saratoga's antitrust claims totaled $184,034.80. Evidence was also presented that $4,000.00 of the fees of Radiology Associates' economic expert were devoted to defend the antitrust claims and constituted litigation expenses.

The record reflects that Saratoga did not respond or controvert any of the evidence presented by Radiology Associates regarding their claim that Saratoga's antitrust claims were groundless and brought in bad faith or for the purpose of harassment. The general rule is that the testimony of an interested witness, such as a party to a suit, though not contradicted, does no more than raise a fact issue to be determined by the jury. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881–82 (Tex.1990). However, there is an exception to this rule—where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law. *Id.* The exception is especially true where the opposing party has the means and opportunity to disprove the testimony, if it is not true, and fails to do so. *Id.* (citing *Anchor Cas. Co. v. Bowers*, 393 S.W.2d 168, 169–70 (Tex.1965)).

The affidavit from Radiology Associates' counsel was the only evidence tendered to the trial court. *See Splettstosser v. Myer,* 779 S.W.2d 806, 808 (Tex.1989); *see also Donwerth v. Preston II Chrysler–Dodge, Inc.,* 775 S.W.2d 634, 637 (Tex.1989). Because Saratoga did not present any contradictory evidence, and the evidence presented by Radiology Associates is clear, direct and positive evidence, I conclude that Saratoga's antitrust claims were groundless and brought in bad faith. Because section 15.21(a)(3) provides that upon finding that a party's antitrust claims are groundless and brought in bad faith, the court "shall" award a reasonable attorney's fee, court costs, and other reasonable expenses of litigation, I would hold that the trial court abused its discretion in denying Radiology Associates its reasonable attorney's fees, court costs, and litigation expenses. *See* TEX. BUS. & COM.CODE ANN. § 15.21(a)(3) (Vernon 2002).

For these reasons, I respectfully dissent.